Evelyn S. MEYER, as Trustee,

v.

UNITED STATES.

No. 108–56.

United States Court of Claims.
March 5, 1958.

Don Reuben, Chicago, Ill., for plaintiff. Perry S. Patterson, Herbert J. Miller, Jr., Washington, D. C., Kirkland, Fleming, Green, Martin & Ellis, Saul A. Epton, and Epton, Scott, McCarthy & Epton, Chicago, Ill., were on the briefs.

Thomas L. McKevitt, Washington, D. C., with whom was Asst. Atty. Gen. Perry W. Morton, for defendant.

LARAMORE, Judge.

This is an action brought by plaintiff for damages resulting from an alleged breach of a lease.

The facts as shown from the pleadings, affidavits, and exhibits attached thereto are as follows:

On June 22, 1951, the Clark-Congress Corporation leased to the United States a 10-story building in Chicago, Illinois, known as the "Rand-McNally Building." The United States agreed to pay for certain portions of the building (then available) at the rate of $1.33½ per square foot until January 1, 1952. Beginning with January 1, 1952, the United States was to lease or occupy the entire building, subject to existing leases, for a 5-year term, for a total rental of $2,500,000

or $500,000 per year, payable in monthly installments of $41,666.67. On or about December 24, 1951, the Clark-Congress Corporation assigned the lease to the plaintiff, as trustee for all the Clark-Congress stockholders. The corporation was then dissolved. The United States, either by negotiation or through condemnation proceedings, terminated the rights of the existing tenants and eventually went into possession of the entire building. The rental was paid when due until August 1955. No rentals have been paid since that date because of a Comptroller General's opinion dated August 12, 1955, declaring the lease invalid. The opinion of the Comptroller General dated August 12, 1955, recites that the lease referred to in the petition has been held invalid on the ground that the rental exceeded the 15 percent of fair market value limitation imposed by the Economy Act of June 30, 1932, 47 Stat. 382, 412, 40 U.S.C.A. § 278a. Accordingly, the General Services Administration was directed to terminate rental payments under that lease. The United States on December 28, 1951, filed condemnation proceedings in the U. S. District Court for the Northern District of Illinois against three of the tenants to acquire their outstanding leasehold interests.

The United States continued in possession and an amended complaint was filed in the condemnation case on December 28, 1955, naming the present plaintiff a defendant, as well as trustees listed in later trust agreements, to acquire (a) "the right to use and occupy the premises * * * from the date the same were first occupied by the United States until the date that title thereto shall vest in the United States by judicial process" and (b) "the full fee simple title to the building and improvements, together with the land upon which same are situated." On June 18, 1956 the United States filed a declaration of taking, from which date title vested in the United States. The present plaintiff has filed an answer in the Chicago condemnation proceedings attacking the Government's right to condemnation for the period

covered by the lease. The United States has filed a motion to strike that answer as not responsive and as based on erroneous legal concepts. Later Evelyn S. Meyer, as trustee, filed an amended answer attacking the jurisdiction of the District Court, and, among other things, challenging the District Court's jurisdiction to award rent which had become due. The United States filed a motion to strike that portion of the amended answer. This motion was sustained and that part of the answer was ordered stricken.

Plaintiff filed this suit asking for the sum of $291,666.69 representing unpaid rentals under the lease from August 1, 1955 through February 1956, and for the sum of $41,666.67 for each month thereafter.

After the institution of this suit defendant filed a motion to dismiss the petition on the ground that pursuant to 28 U.S.C. § 1500 this court is without jurisdiction because the claim upon which plaintiff sues here is pending in the condemnation proceedings in the U. S. District Court for the Northern District of Illinois, Eastern Division.

On April 3, 1957, defendant's above motion was overruled by this court holding that this court had jurisdiction over the claim sued on and section 1500, supra, had no application. Meyer v. United States, Ct.Cl., 150 F.Supp. 314.

On June 24, 1957, the defendant filed answer to the petition setting forth the following defenses: (a) that the yearly rental of $500,000 payable under the lease exceeded 15 percent of the fair market value limitation required by the Economy Act of 1932, supra, and that in executing the lease defendant's employees exceeded their authority and the entire lease is null and void; (b) that the defendant filed a condemnation proceeding in the U. S. District Court for the Northern District of Illinois wherein the amount of compensation due the plaintiff for the period of time in question was presented for adjudication and that, since the U. S. District Court for the Northern

District of Illinois has acquired jurisdiction over the identical rent issue, the plaintiff's claim should be abated;[1] (c) that plaintiff had instituted another action in the U. S. District Court for the Northern District of Illinois wherein the plaintiff sought adjudication that the lease should be declared terminated as of October 28, 1955, and that by reason of that action the present suit must be dismissed pursuant to the provisions of 28 U.S.C. § 1500, supra; and (d) that the beneficiaries of the trust agreement are necessary parties to the proceeding. The United States also filed a counterclaim for the sum of $149,236.45, representing the difference between the sum of $1,853,446.12 paid under the lease during the period August 1, 1951 through July 31, 1955, and the sum of $1,715.424.-60, representing the highest rentals that could have lawfully been paid for the period from August 1, 1951 to June 18, 1956, by application of the 15 percent fair market value limitation required by the Economy Act.

The plaintiff has filed a motion to strike the second, third, and fourth defenses, together with a motion for partial summary judgment (a) declaring the lease valid, (b) granting judgment in the sum of $441,666.70, with interest, for the period running from August 1, 1955 to June 18, 1956, and (c) declaring that the defendant is not entitled to recover on its counterclaim.

The second defense points out that the United States filed an amended complaint in a pending condemnation proceeding in the U. S. District Court for the Northern District of Illinois to acquire "fee interest in the building, together with a temporary interest therein from the time the United States first went into possession." The present plaintiff filed answer attacking the jurisdiction of the District Court. The United States filed a motion to strike that portion of the answer and

said motion was sustained by the District Court. The second defense then asserts that the plaintiff's claim for rent in this suit is therefore already the subject of litigation in the pending condemnation case, and since the U. S. District Court for the Northern District of Illinois first acquired jurisdiction over the identical issues, that part of plaintiff's claims presented here must be abated.

■ The above issue was clearly before this court in defendant's motion to strike under section 1500, supra, and this could only be an attempt by the Government to reargue the same issue. Therefore, plaintiff's motion to strike the second defense is well taken.

■ The third defense alleges that this suit is statutorily barred by 28 U.S. C. § 1500, supra, because of a suit brought by plaintiff against her mortgagee seeking a declaration of her rights pursuant to the mortgage indenture between the parties.

The action in the District Court above referred to was for a declaratory judgment asking the court to determine (1) that continued occupancy by the Government of plaintiff's building without payment of rental rendered it and its agents trespassers and justified termination of the lease by plaintiff and recovery of possession of the premises, (2) that such action would not constitute a breach of the mortgage agreement between plaintiff and its mortgagee, with codefendant, New York Life Insurance Company, and (3) to enjoin the insurance company from treating such action as a breach of the mortgage.

It was not a suit against the Government or against any one professing to act "directly or indirectly under the authority of the United States," asking for a money judgment against the United States, nor was it the same action as the one pending here.[2] The plaintiff's claim

---

1. On January 24, 1958, the District Court of Illinois continued the condemnation generally awaiting the decision of the Court of Claims in the matter now in issue.

2. The District Court suit has been dismissed as moot.

for rent in this suit therefore was not the subject of the litigation in the District Court above referred to, and plaintiff's motion to strike this defense is granted.

Defendant's fourth defense alleges that under certain of the trust provisions the beneficiaries, rather than the trustee, purport to retain "full management of said real estate and control of the selling, renting and handling thereof, and any beneficiary or his or her agent shall handle the rents thereof." Therefore, plaintiff's beneficiaries would be necessary parties to this action.

Plaintiff in her brief, while not conceding the correctness of defendant's position, has offered to "forthwith file the appearance of all of the plaintiff's beneficiaries." The filing of said appearances would obviate defendant's fourth defense. However, full explanation of the trustee's rights appears in the trust agreement, which permits plaintiff to sue in her own name and without her beneficiaries being joined. Rule 20 of the Rules of this court, 28 U.S.C. Under these circumstances plaintiff's beneficiaries are not necessary parties to this action and plaintiff's motion to strike this defense is well taken.

The remaining and final issue before this court is plaintiff's motion for partial summary judgment.

Patently, the Economy Act of 1932, supra, was a device of Congress to insure that Government agents would not enter into rental contracts at a rate higher than could be justified under a correct valuation of the property. The act was manifestly aimed at the conduct of employees of the Government engaged in leasing operations.

Here the agent of the Government, clothed with authority to lease, had the building appraised by another Government employee who had authority to so appraise.

The General Accounting Office objected for the stated reason that the appraisal was too high and based its objections on not only the standards used in the appraisal but on an allegation that Mr. Hawkinson, the appraiser, had misrepresented his qualifications for employment by the General Services Administration. As to the latter, no fraud is charged and certainly no misrepresentations by the appraiser to the General Services Administration could be imputed to plaintiff.

This leaves the question as to whether or not the appraisal was so erroneously high that the rental could not be justified under the 15 percent limitation contained in the Economy Act of 1932, supra.

There are many extrinsic facts surrounding every business transaction which have an important bearing and influence upon its results. The fact that the making of an appraisal is not an exact science is always known by the parties. However, the fact that some different person or agency might have another and different idea as to valuation, was unknown at least to the plaintiff. Since the rental was paid under the lease for a long period of time it leads us to believe that that fact was unknown also to the defendant. If known, such fact might have prevented the transaction; i.e., had plaintiff known that a new and lower appraisal would be made four years later, she undoubtedly would not have agreed upon not only the terms of the lease but the terms sought now to be imposed by the defendant. In that event, the only avenue open to the Government would have been an immediate condemnation suit. In that posture the value would have immediately come into focus and from evidence immediately taken the value could have been determined.

Certainly an equity court could not now impose upon plaintiff a rescission of the contract based upon a finding of fraud or mutual mistake, especially where none is contended by the Government. If equity could not intervene to reform or restate the terms of the lease, the Government cannot now in law accomplish the same. So in this instance, when the Government's appraiser placed a value on the building and the Government later

entered into a lease, plaintiff had a right to rely upon the acts of the Government's agent. Then and there, in the absence of fraud or mutual mistake, the question of valuation and rental was once and for all put to rest, since there can be no question but that the rental stated in the lease based upon the original appraisal was not in violation of the Economy Act of 1932, supra.

The defendant argues further that the appraiser took into consideration only the insurance value and hence the appraisal was void because not made under standards imposed by law.

█ The facts do show that the insurance value was used to determine the appraised value and under the criteria set out in the Manual of Operations of the Public Buildings Administration of the Federal Works Agency, this was a factor to be taken into consideration. Furthermore, the appraisal itself shows that this was not the only thing considered. The appraisal report of Hawkinson shows that he considered not only the fire insurance appraisals but the physical aspects of the property, reproduction costs, income, assessed value and *comparable sales data.* This we believe constitutes a sufficient basis for a full and fair appraisal.

Another objection raised by the defendant to the appraisal is that it was not made until after the lease was signed. However, the facts show that an oral statement of value was made to the leasing officer and that a formal written and signed appraisal was supplied shortly thereafter. From this we cannot conclude that an appraisal was not made and supplied to the leasing officer prior to the execution of the lease.

█ In conclusion we feel that the appraisal followed the standards then in effect and the lease entered into between plaintiff and the Government was valid and binding on both parties. From this we conclude that plaintiff is entitled to damages amounting to the sum of the rentals as agreed upon from the first day of August 1955, when defendant ceased to pay the rent, up to and through June 18, 1956, when defendant filed a declaration of taking. We further conclude that inasmuch as we hold the lease to be valid, defendant is not entitled to recover on its counterclaim and the counterclaim will be dismissed.

Plaintiff's motion to strike the second, third, and fourth defenses is granted and said portions of defendant's answer will be stricken. Plaintiff's motion for partial summary judgment is granted. The amount of recovery will be determined pursuant to Rule 38(c) of the Rules of this court.

It is so ordered.

JONES, Chief Judge, and MADDEN and LITTLETON, Judges, concur.

WHITAKER, Judge, took no part in the consideration and decision of this case.