**UNITED STATES of America, Petitioner-Plaintiff,**

v.

**CERTAIN LAND together with the buildings and improvements thereon, AT ELLENVILLE, in the TOWN OF WAWARSING, COUNTY OF ULSTER, STATE OF NEW YORK, and Kathleen Gottfried, et al., Defendants.**

United States District Court
S. D. New York.

Nov. 18, 1958.

Harry T. Dolan, Sp. Asst. to the Atty. Gen., for petitioner-plaintiff.

Goldwater & Flynn, New York City, for defendant Kathleen Gottfried; Monroe Goldwater, Milton Small, Alan R. Morris, New York City, of counsel.

KNOX, District Judge.

On December 14, 1951, Kathleen Gottfried, owner of certain improved real estate, located at Ellenville, New York, leased the same to the United States for use as a warehouse, and office quarters. The term was five years, beginning March 1, 1952, and ending February 28, 1957. Rental was at the rate of $20,000 per annum, payable in equal monthly installments of $1,666.66.

The Government, upon giving the landlord ninety days' prior notice in writing, had the right to terminate the lease, on either February 28 of the years 1953, 1954, 1955, or February 29, 1956. The lease also provided that the United States,

---

at its option, might renew the letting "for a period of five years at a rental of $24,000 per annum, upon the terms and conditions therein specified, provided notice in writing to the Lessor be given at least 90 days before the expiration of the lease."

The premises, it appears, were used by the Federal Civil Defense Administration for offices, and the storage of medical supplies, and equipment, for the protection of persons within the metropolitan area of New York, in the event of an air attack by a national enemy.

On December 11, 1956, less than 90 days prior to February 28, 1957, Harvey F. Gibson, of the Real Estate Division of the General Services Administration, acting through Anthony Boemi, addressed a letter to Kathleen Gottfried, in which he said:

> "The referenced lease (G.S.–02B–691) by its terms expires February 28, 1957. It is the desire of this office to remain in this location for an additional period of five years providing, however, that the rental continue at the present rate of $20,000 per year; also, that the Government have the right to terminate this lease in whole, effective on either February 28, 1958, * * * 1959, February 29, 1960, or February 28, 1961, upon 90 days prior notice in writing to the lessor.
>
> "We are not in a position to offer a lease on any other basis than the above, and trust our past occupancy and relationship * * * prompt you to accept this offer.
>
> "Please advise us of your decision. We will prepare * * * necessary supplemental agreement."

On December 14, 1956, Mrs. Gottfried sent a lengthy and argumentative reply to the General Services Administration, in which she stated:

> "* * * Therefore, be advised that we cannot accept your suggestion, and must insist that if you desire to remain in this building, it be taken under the terms outlined in your present lease, for a full five years period at a rental of $24,000 per annum.'"

On December 20, 1956, Boemi answered Mrs. Gottfried's letter of December 14, and, among other statements, said:

> "It is the opinion of this office that the rental value of the property * * * is no more than $20,000 per year. Further, it is our intention to stand firm in our requirement that any renewal of this lease beyond its present basic term, contain a cancellation option similar to cancellation option now in the lease * * * This has been already expressed in our letter of December 11, 1956, and correctly interpreted in the first paragraph of your letter of December 14, 1956.
>
> "We are sending a copy of your letter of December 14th to Federal Civil Defense Administration, and asking them to advise this office if a continuing need for this space exists beyond present term of the lease. If (it) advises that such a need does exist, this office will take whatever action is necessary to protect the interests of the Government."

On January 21, 1957, Mrs. Gottfried, acting through her husband, Harold Gottfried, wrote a letter to the General Services Administration, "Attention of Anthony Boemi, Chief Leasing Branch", in which, *inter alia,* he said:

> "This will confirm my telephone conversation of today concerning * * * property leased by you at * * * Ellenville * * * Your lease will expire February 28, 1957.
>
> "* * * (A) short while ago, you expressed a desire to remain as a tenant under conditions which were not satisfactory, namely, you offered to pay a rental of $20,000 per year, and then you wanted to stay on a monthly basis and/or cancellation within any year thereafter. I had previously discussed this matter with you; and stated that under the lease made December 14, 1951, in Clause

#5, your agreement was that the lease may be renewed at the option of the Government for a period of five years at a rental of not less than $24,000 per year * * * As you did not see fit to accept the written commitment * * * expressed in this lease, dated December 14, 1951, we cannot accept any other version, but your desire to stay on as a hold-over tenant. Therefore, we shall determine that your lease does not exist after February 28, 1957.

"Commencing March 1, 1957, we shall render a rental bill of $3,500 per month, for the use and occupancy of the premises which you formerly had a lease on."

Sometime after the dispatch of this letter, which, apparently was unanswered, Harold Gottfried seems to have informed a representative of the Government that it, as a "holdover tenant", would be charged $3,750 per month for the use and occupancy of the premises.

On March 1, 1957, Kathleen Gottfried rendered a bill to the General Services Administration for $3,750 for the March, 1957, rent of the "Main" building on the premises. Similar bills, I am given to understand, were rendered for succeeding months of the Government's occupancy. None of them has been paid.

On *December 27, 1957* (my italics), Anthony Boemi, then Chief of the Acquisition Branch of Public Building Service, a division, seemingly, of the General Services Administration, and who, previously, had charge of the negotiations between his agency, and Mrs. Gottfried, wrote her a letter, which reads:

"Reference is made to previous correspondence regarding a new lease to cover the Government's continued occupancy of the above cited property beyond February 28, 1957. The Government desires to enter into a new lease subject to the following terms and conditions:

"1.   One year initial term, beginning March 1, 1957, and ending February 28, 1958.

"2.   Two one year renewal options on the part of the Government, provided notice be given to the Lessor in writing 30 days before the lease, or any renewal thereof, would otherwise expire.

"3.   Government to have the right to cancel in whole on 90 days prior written notice.

"4.   Rental rate to be $20,000 per annum.

"We trust you will find the above terms acceptable. If so, please sign the extra copy of this letter and return to this office before January 21, 1958. Upon its receipt, we will prepare the necessary formal documents.

"Accepted

"By ————————

"Date ————————"

This letter, to my mind, does not indicate that the United States was in adverse possession of the property. On the contrary, it would appear that the Government, as a holdover tenant, was trying to make peace with its landlord.

Harold Gottfried, on behalf of his wife, replied to the foregoing letter on December 30, 1957. In it, he said:

"Enclosed (is) the original of the letter * * * dated December 27, 1957, concerning * * * property at Ellenville. It is * * * obvious that I cannot accept any (of its) terms. * * *

"You have not paid your rent as per our bills * * * and the total now due * * * is $37,500. * * * you were advised prior to the expiration of your former lease that I would not accept any lease other than a firm five year period. You were later notified that the rental for this new lease would be * * * $3750 per month. * * * you informed (my agent) that (this) matter would be referred to the Department of Justice. Each time when you were asked when this inquiry would be made, you were * * * vague, * * * and said you were

surprised that we did not hear from them.

"About one and one half months ago, you (said) your department had selected Cross & Brown (a New York real estate organization), to give a rental value for you. * * * We have not heard from anyone. * * *

"The one thing * * * I am puzzled about, is your arbitrary attitude in not paying any rental for the use of this building * * * pending * * * inquiries or advice you may get from others as to (the property's) fair value.

"You * * * realize * * * you have not paid any rental for the * * * property in almost a year. * * *

"I have asked you on two occasions to pay your old rent without prejudice to my rights, or your rights, pending a decision by the Court of Claims. Although your office in Washington said you could do this, you have told me * * * you did not know how you could do it. * * * "

Between the date of this letter (December 30, 1957) and April 23, 1958, the Government continued to occupy the premises, and paid no rent.

However, on the last mentioned date, the United States filed suit to condemn an estate in the property under discussion.

The complaint, in part, reads:

"3. The property described in Exhibit 'A' * * * is taken for the public use, as prescribed by the Acts of Congress aforesaid, and the space is to be used as a warehouse and office quarters for the Federal Civil Defense Administration.

"4. The interest to be acquired in the property is the use and occupancy of certain land, together with the buildings and improvements thereon, for a term of years commencing March 1, 1957, and ending February 28, 1959, extendible, at the election of the United States, for yearly periods thereafter until February 28, 1962, notice of which election shall be filed in the proceeding at least 30 days prior to the end of said initial term * * * and each extended term, together with the right to remove, within a reasonable time after the expiration of said initial or any extended term, any and all improvements * * * placed therein or thereon by or for the United States at any time during its occupancy * *.

"8. That the Government is and has been in possession of the property * * since March 1, 1957, as a *holdover* (emphasis supplied) under Lease No. GS–02B–691, dated December 14, 1951, for a term beginning March 1, 1952, and ending February 28, 1957."

On April 23, 1958, Franklin Floete, then Administrator of General Services Administration of the United States * * * filed a "Declaration of Taking" of the property, and deposited in the Registry of the Court the sum of $36,300, as estimated just compensation for the taking for the period commencing March 1, 1957, and ending February 28, 1959. This sum, it is noted, is $1,850 less per annum, then the rental reserved, and paid, under the lease dated December 14, 1951.

On April 23, 1958, a judge of this Court signed, and filed, an ex parte order, whereby the use, occupancy and possession of the property by the United States as of March 1, 1957, was confirmed, subject to the right of the condemnee to have the just compensation fixed and determined by the Court. No portion of the money deposited in Court has been withdrawn by the condemnee.

On September 8, 1958, Mrs. Gottfried made answer to the Government's complaint. After setting forth the terms of the Government's lease of December 14, 1951, and related matters, she charges that the United States remained in possession of the property until the institution of the instant action as a holdover tenant, and is here seeking to continue the same estate which it "already has, has had, and still has, by virtue of its holdover status."

In addition, she pleads several alternative, and affirmative, defenses. They may be summarized as follows:

"Second. By reason of the foregoing (the Government) is debarred from prosecuting this action for any period prior to April 23, 1958, (the date of the filing of the Government's complaint) and may not, retroactively, obtain possession of the premises sought to be condemned for the term commencing March 1, 1957; and that the complaint seeking to condemn for such period should be dismissed.

"Third. That prior to the expiration of the lease, and on January 21, 1957, defendant gave written notice to the Government that if it held over after the term of the lease expired, such holding over would be at a rental of $3500 per month; and that, the United States without any prior response to the lessor, or communication, or disavowal of the terms of the notice * * * remained in possession of the premises, and continued in possession * * * up to and including the date of defendant's answer; and, thereby, the just compensation for the estate sought to be taken is, at least, at the rate of $3500 per month, in accordance with the agreement of the parties.

"Fourth. That prior to the expiration of the lease on February 28, 1957, defendant, through her agent, orally advised the Government, that if it remained in possession of the premises beyond the expiration of the lease, the rental of the premises would be at the rate of $3750 per month; that the United States continued its possession, and that commencing March 1, 1957, to and including June 1, 1958, defendant sent a statement of account to plaintiff, showing the monthly rental of the premises to be $3750, to which the Government made no objection.

"Fifth. Defendant has suffered damage due to the fact that she has been deprived of the loss of use of the rental money that should have been paid her over the period extending from March 1, 1957, to April 23, 1958.

"Sixth. The property sought to be taken comprises a portion of a larger tract owned by defendant. By reason of the taking of that part of the tract, which is the subject of this action, and which contains the only substantial improvement on said property, the balance of the tract has been reduced in value."

By stipulation of the parties, paragraph "2" of defendant's answer was amended so as to include a portion of the lease, as set forth in a memorandum dated June 2, 1952. From a practical standpoint, this amendment does not substantially affect the relationship of the parties.

■ If it be that the Government, as defendant claims, and as the United States avers, is in possession of the property "as a holdover under Lease No. GS-02B-691, dated December 14, 1951," the latter's liability is in excess of $10,000, and cannot be adjudicated in this Court. *See:* U. S. Code Annotated, Title 28, Section 1346(a) (2), and Section 1491 (4).

As to the merits of defendant's contentions, concerning her right to recover from the Government, and the extent thereof, I make no comment, except to say that, on the face of the pleadings, she seems to have a *prima facie* case against the United States. Her claim, whatever its merits, is justiciable only in the Court of Claims. Title 28 U.S.C. A. § 1491(4), supra.

Defendant, as yet, has filed no suit in that tribunal. Nevertheless, her claim against the Government for its use and occupation of the premises for the period extending from March 1, 1957, to April 23, 1958, so far as I am informed, is not barred by any Statute of Limitation.

■ If, under the papers before me, I were so presumptuous as to pass judgment upon the rental liability, if any, of the Government, as between the last mentioned dates, my decision, quickly enough, would become a nullity. *See:* United States v. 534.7 Acres of Land, 157 F.2d 828, at page 831 (5th Cir., 1946).

Consequently, at the election of the Government, to be made within 20 days, I shall either dismiss so much of its

complaint as asks for relief between March 1, 1957, and April 23, 1958, the date of filing its condemnation suit; or, stay such suit, pending a determination by the Court of Claims upon the contentions advanced by Mrs. Gottfried. If the Government elects to proceed upon its condemnation suit as of April 23, 1958, defendant's answer will be stricken, with leave to plead over within 20 days; and her motion for a dismissal of the complaint, denied.

An appropriate order may be submitted.