**GEORGIA–PACIFIC CORPORATION**

v.

**The UNITED STATES.**

**No. 315–75.**

United States Court of Claims.

Jan. 25, 1978.

---

Angelo A. Iadarola, attorney of record, Washington, D. C., for plaintiff; Wilkinson, Cragun & Barker, Philip A. Nacke and Charles I. Appler, Washington, D. C., of counsel.

L. Mark Wine, Southfield, Mich., with whom was Asst. Atty. Gen. James W. Moorman, Washington, D. C., for defendant; Eric S. Gould, of counsel.

Before DURFEE, Senior Judge,* DAVIS and KASHIWA, Judges.

## ON DEFENDANT'S MOTION AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

DAVIS, Judge:

This troubling problem is what should be done when a claimant brings suit in this court for an inverse condemnation of land interests, and not long thereafter the Government files a District Court condemnation action involving the very same interests but asserting a later taking-date. On August 22, 1975, Georgia Pacific filed its petition here asking just compensation for an alleged taking by the Federal Government in 1974–1975 of certain of its land in West Virginia. About half-a-year later, on March 5, 1976, the United States filed a condemnation action and declaration of taking in the Southern District of West Virginia (*United States v. 9,268.52 Acres of Land,*

Civil No. 76–0045BL), covering all the land embraced in plaintiff's petition in this court but assuming that the taking occurred only on March 5, 1976.

Georgia-Pacific asked the District Court for a stay of the valuation proceedings in the condemnation suit until resolution of its claim in this court for a prior taking. The District Court denied this motion and the Fourth Circuit dismissed the company's appeal, holding the District Court's order non-appealable and also that there was no such abuse of discretion as to necessitate resort to the extraordinary remedy of mandamus. *United States of America v. Georgia-Pacific Corp.,* 562 F.2d 294 (1977). Meanwhile both parties had moved for summary judgment in this court, overwhelming us with long and detailed briefs, and a mass of affidavits and documents. Defendant urges, of course, that no eminent domain ensued upon the Government's activities in 1972–1976 until the institution of the West Virginia condemnation action in March 1976. Plaintiff sought to prove, on the contrary, that a taking had occurred before the beginning of the current suit in August 1975.[1]

If we felt compelled to determine the merits of the parties' respective positions, we clearly would not do so on these cross-motions for summary judgment. There is a hard residue of factual dispute which would

---

* Senior Judge Durfee died after the argument but before the preparation and adoption of this opinion.

1. In 1962 Congress first authorized the R. D. Bailey Lake Project (in West Virginia) primarily for flood control. After considerable study and reevaluation, the Project evolved into one encompassing approximately 20,000 acres in the coal-producing region of West Virginia. Georgia-Pacific was the largest land-owner, controlling some 7,000 acres in fee and having subsurface rights to another 2,500 acres. The company claims that at first the Corps of Engineers (which was responsible for the Project) allowed mining operators to continue their work so long as they did not interfere with the Project but that, beginning in 1972, the Corps, pushed by environmental interests represented on Congressional Committees, developed and ultimately put into effect severe restrictions on mining use in the area. These alleged restric-

tions, plus a series of threatened legal actions and asserted informal prohibitions and regulations, together with a refusal or inability to condemn the property outright—all alleged to have led to the limitation, postponement or abandonment of mining activity by plaintiff's coal lessees—are said by plaintiff to have constituted the inverse taking for which it sues in this court. Plaintiff says that thereby it "suffered a taking by defendant, without compensation, of its sub-surface mineral holdings totalling 9,288.07 acres, and so much of the surface as was necessary for development of the sub-surface within the designated Project boundaries." There was at no time any physical invasion of the property by the Government. The defense here is that the Government was merely exercising its rights under agreements it had with Georgia-Pacific and/or imposing lawful regulations which fell short of a taking.

first have to be tried and determined in the Trial Division. And to the extent that there are portions of the contested issues which might in the end be found to be "legal," they are so complex and so intermeshed with factual and particular details that we would first ask a trial judge to sift through the mass of material thrust upon us.[2] *See Cheyenne-Arapaho Tribes v. United States,* 512 F.2d 1390, 1394, 206 Ct.Cl. 340, 349 (1975); *Space Research Corp. v. United States,* Ct.Cl. No. 389–74, order of Nov. 11, 1977. This is another case in which summary judgment will not serve as a short-cut or a by-pass. *See Julius Goldman's Egg City v. United States,* 556 F.2d 1096, 214 Ct.Cl. 345 (1977).

We have decided, however, that there is another course we can properly take and should follow. In our view, which we shall spell out, the District Court has the authority, in the condemnation suit, first, to determine whether the date of taking was March 5, 1976 (when that action was begun by the United States and the declaration of taking filed) or the pre-August-1975 date claimed by Georgia-Pacific in the present inverse condemnation case, and second, to value the property as of the date of taking it finds.[3] Accordingly, we shall suspend further proceedings in this litigation until the District Court has decided when the date of taking occurred, or has refused to inquire whether a time prior to March 5, 1976, is the correct one.

The legally significant bone of contention is the date of taking. Georgia-Pacific tells us that coal-land prices were higher in 1974–1975 and relatively low in March 1976 when the declaration of taking was filed; it is even hinted that the Government may have deliberately waited for such a favorable time before beginning its condemna-

tion action in the District Court. That is why the company pushes its claim here.[4] But the District Court, in our opinion, is not bound to adopt the March 1976 date as the taking date for Georgia-Pacific's lands; if it accepts the present claimant's position it can find that the lands were taken on some date in 1974 or 1975, and then the court can value the property as of that time.

We draw this conclusion largely from *United States v. Dow,* 357 U.S. 17, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958), in which the Supreme Court ruled in a condemnation suit that the claim to just compensation for the taking of an easement vested in the landowners at the time the Government entered into possession of the easement (1943) rather than the later date when the declaration of taking was filed (1946). In 1943 the United States brought a condemnation proceeding to acquire a certain right-of-way for a pipeline; no declaration of taking was filed at that time but the Government entered into immediate possession under a court order. Thereafter (in 1945) the tract (subject to the right-of-way) was conveyed to Dow and in 1946 the Government filed a declaration of taking covering the right-of-way, depositing estimated compensation.

The issue before the Court was whether Dow—who had no interest when the United States entered into possession in 1943 but did have an interest at the time of the declaration of taking in 1946—was entitled to any award for the right-of-way. The Court held not. It declared that Dow could prevail only if the "taking" occurred while he was the owner (357 U.S. at 20–21, 78 S.Ct. 1039), but that the "taking" occurred in 1943 when the Government entered into possession of the right-of-way (357 U.S. at 21, 78 S.Ct. 1039). If the

---

2. Plaintiff's briefs on the cross-motions run to 325 pages and its affidavits and documents add three additional volumes. Defendant's briefs came to 105 pages plus two and one-half volumes of affidavits and documents.

3. Both parties summarily rejected this position when it was tentatively broached from the bench during oral argument. Nevertheless, af-

ter reflection, we consider it the most appropriate disposition.

4. Plaintiff also notes that it would be able to obtain greater interest if the taking-date were in 1974–75, and that if the suit continued here Georgia-Pacific would be eligible (if it prevailed) for an award of attorneys' fees under 42 U.S.C. § 4654(c).

United States enters in possession before the formal acquisition of title (which passes on payment), the normal rule is that "it is the former event which constitutes the act of taking. It is that event which gives rise to the claim for compensation and fixes the date as of which the land is to be valued and the Government's obligation to pay interest accrues" (357 U.S. at 22, 78 S.Ct. at 1044). Similarly, where a declaration of taking is filed after the Government has taken possession, the date of "taking" is the prior date on which the Government entered and appropriated the property to public use (357 U.S. at 23, 78 S.Ct. 1039). That rule is consistent with the principle that such entry is the time of taking for purposes of valuing the property and fixing the date on which the Government's obligation to pay interest begins to run (357 U.S. at 24, 78 S.Ct. 1039); the rule also works against manipulation by owners or the Government which might occur if a later declaration of taking were thought to be the taking (357 U.S. at 25, 78 S.Ct. 1039).

■■■ The theory of *Dow*, with its insistence on the date of actual taking as the valuation date and the date from which interest begins to run, seems to us to empower the condemnation court, in a case like this, to find that the actual taking (like the Government's entry onto the right-of-way in *Dow*) preceded the declaration of taking. The one obvious difference from *Dow* is that there the condemnation suit had been brought before the entry was effected while here the taking claimed by Georgia-Pacific (if there was one) antedated the beginning of the condemnation suit (which was contemporaneous with the declaration of taking). Under the *Dow* rationale that distinction seems to us irrelevant to the authority of the condemnation court to determine the date of actual taking. Neither the terms of the legislation granting the Government the right to bring the condemnation action (33 U.S.C. §§ 591, 701c–1, *see also* 40 U.S.C. § 257), nor the conception

of a condemnation suit, preclude the condemnation court from deciding that the actual date of taking preceded the filing of the suit. A condemnation suit is one means of determining that the Government has title to property or of passing title to the Government. The objective of such a suit is not restricted to effectuating a transfer of actual possession from the asserted landowner to the United States (though that is a sufficient aim, *United States v. 93.970 Acres of Land*, 360 U.S. 328, 330, 332, 79 S.Ct. 1193, 3 L.Ed.2d 1275 (1959); *Best v. Humboldt Mining Co.*, 371 U.S. 334, 340, 83 S.Ct. 379, 9 L.Ed.2d 350 (1963)). Other significant purposes (which can be pursued even where the Government already has possession) are to pass title to the Government (as *Dow* held, title, distinguished from possession, does not pass until compensation is paid or made available to the owner) or to make it clear, in case of dispute, that the Government already has full right to use or possess the property without payment of further compensation. *See United States v. 93.970 Acres of Land, supra*, 360 U.S. at 330, 332, 79 S.Ct. 1193; *Best v. Humboldt Mining Co., supra*, 371 U.S. at 335, 340, 79 S.Ct. 1193; *United States v. 422,978 Square Ft. of Land, San Francisco*, 445 F.2d 1180, 1188–89 (9th Cir. 1971).[5] Even the function of valuation need not necessarily be performed by the condemnation court; the Supreme Court has held a condemnation suit sufficiently malleable and all-encompassing, where the Government's right to property is involved, to allow the court to delegate determination of a mining claim to administrative proceedings. *Best v. Humboldt Mining Co., supra*. We consider, then, that the current theory of the condemnation suit allows the condemnation court great leeway, and that, where the Government sees fit to bring a condemnation suit, the court is authorized to make an authoritative determination, first, whether or not the property was compensably taken by the United

---

**5.** The *422,978 Square Ft. of Land* opinion said: "Filing the complaint in condemnation did not alone constitute a taking [citing cases] but was only a method of adjudicating the contention of

the United States that the State [of California, the asserted landowner] was not entitled to compensation."

States at all and if so when, second, of the value of that property as of that date of taking, and, third, of the passage of title to the Government through the ascertainment and payment of compensation.[6]

To us, the standards of efficiency, expedition, and inexpensiveness (*cf. United States v. 93.970 Acres of Land, supra,* 360 U.S. at 332, 79 S.Ct. 1193) call for the centralization, in the present situation, of the whole proceeding in one tribunal rather than the bifurcation insisted upon by each party (*see* note 3, *supra* ). The condemnation proceeding covers several parties in addition to Georgia-Pacific. We thus have only part of the eminent domain litigation in this court. If we were to decide the merits of the pre-March 1976 taking issue proffered by Georgia-Pacific, the District Court would either have to delay its entire proceeding until we had concluded ours, or go ahead with respect to other parties (at the risk of repetitive further litigation if it was ultimately decided here that Georgia-Pacific was wrong in its claim of a pre-March 1976 taking) or proceed with its whole case (at the risk of contemporaneous litigation in both tribunals, litigation which might prove wasteful and unnecessary in the District Court if Georgia-Pacific prevailed here on its claim). And even if the District Court (despite its previous denial of Georgia-Pacific's stay motion) chose to wait for our proceedings, the matter would still have to go back there if we decided that no taking occurred before March 5, 1976; we have no jurisdiction to determine valuation if the taking occurred only when the taking-declaration was filed on that date. The nub of it is that only the District Court is in a position to decide all phases of the litigation in the event Georgia-Pacific's claim of an early taking should be rejected.

Moreover, a single tribunal is better able than two or more independent courts to direct and handle variant and alternative claims all bearing on the same situation. Sometimes such unified treatment is precluded by jurisdictional statutes, but where it is not—as we think is true of this instance—it is ordinarily better to centralize the proceedings in the tribunal which has the widest scope to handle all the parts of what is in commonsense one unified piece of litigation. That is a strong thread running throughout the law from the theory of the compulsory counterclaim to the creation of the Judicial Panel on Multidistrict Litigation.

To these demands of practicality there have been opposed some technical arguments which we consider unavailing. The Government has told us that the *Dow* theory can only be used where the Government itself puts forth (as it did in *Dow* ) an earlier taking-date than the filing of the declaration of taking. We know of no reason why this should be so; nothing in the *Dow* opinion or the current theory of condemnation suits (as we understand it, *see supra* ) gives the Government such a one-sided choice or precludes the landowner from saying that the actual taking (stressed in *Dow* ) preceded the taking-declaration. On the other hand, Georgia-Pacific told the District Court[7] that that tribunal had no authority to consider a pre-March 1976 taking date because to take that course would be tantamount to entertaining a forbidden counterclaim by Georgia-Pacific against the United States under the Tucker Act for more than $10,000: But that position would be valid only if the District Court, in its role as a condemnation court, were forbidden from considering any date of taking before March 5, 1976, and accordingly were able to consider Georgia-Pacific's pre-March 1976

---

**6.** In *United States v. 422,978 Square Ft. of Land, San Francisco, supra,* 445 F.2d at 1182–1184, 1187–1189, the Ninth Circuit decided, in a condemnation suit first brought in 1955, that the taking, if any, occurred in 1940 and the landowner (the State of California) was barred from all recovery in the condemnation suit because it failed to seek Tucker Act relief within

six years (the limitations period) after 1940. Thus, the court held in a condemnation action begun in 1955, that any taking occurred no later than 1946.

**7.** In its Memorandum of Points and Authorities In Support of Defendant Georgia-Pacific Corp.'s Motion for Stay of Proceedings.

position only in its capacity as a Tucker Act court determining a monetary claim against the United States. We have shown above that the postulate is incorrect—that the District Court, as a condemnation court, can decide whether or not the taking occurred in 1974 or 1975. In the District Court there is no affirmative claim at all by Georgia-Pacific against the Government and the Tucker Act is not implicated. The condemnation action puts in issue the date of taking if Georgia-Pacific so wills it; if Georgia-Pacific tells the condemnation court, as we think it should, that in the company's view the taking occurred before March 5, 1976, that court can (in our view) decide the question and determine compensation accordingly—all in its capacity as the condemnation court.[8]

We do not say that this court is without jurisdiction over the claim of a taking before March 1976. Our position is that both this court and the District Court can take account of, and decide, that claim—but that only the District Court, now that the Government has filed a condemnation suit, has authority to determine all aspects of Georgia-Pacific's right to compensation,[9] and therefore that the District Court is the preferred forum in which to center the whole litigation.

These are our views, but the District Court (or higher tribunals) may disagree either as to the range of the condemnation court's authority or as to the discretionary appropriateness of converging all aspects of this particular litigation in the District Court. We shall therefore do no more than

suspend proceedings here until the District Court has had the opportunity to determine what course it will take. If that court (or a higher court) rules that it will not consider any date of taking before March 1976, we shall terminate the suspension here and proceed toward determination of the inverse condemnation claim of a pre-March 1976 taking. We have already indicated, *supra*, that in that event we shall need the help of the Trial Division in the face of the detailed issues and the overwhelming accumulation of affidavits, documentation, and argumentation presented to us.

Proceedings here are suspended to allow the District Court opportunity to decide whether it will consider any alleged taking date prior to March 5, 1976.

*So ordered.*

---

**8.** Neither *United States v. Certain Land*, 203 F.Supp. 454 (S.D.N.Y.1958), nor *Meyer v. United States*, 150 F.Supp. 314, 138 Ct.Cl. 86 (1957), 159 F.Supp. 333, 141 Ct.Cl. 537 (1958), decides anything to the contrary. In *Certain Land* the Government's condemnation complaint itself admitted on its face, and the landowner agreed, that the United States had been in possession of the property, before the condemnation suit was commenced, as a holdover tenant under a specified lease from the defendant landowner—the condemnation suit purported to cover that prior period as well as future occupancy—and the court held that in those circumstances determination of the rental value for the prior period would necessarily

amount to a Tucker Act suit for holdover rent which was for more than $10,000 and beyond the District Court's jurisdiction. *Meyer* involved the Government's defense that a lessor's complaint here was barred by 28 U.S.C. § 1500 where the Government had filed a condemnation suit purporting to cover, retroactively, the same leasehold interest; the court held that § 1500 bars only duplicative suits by claimants, and does not cover the situation where the other suit is brought by the Government itself.

**9.** *I. e.*, only the District Court can determine valuation if the taking date is held to be March 5, 1976.