Patents; remand to Trial Division of complicated cross-motions for summary judgment; laches; estoppel against Government for earlier failure to claim ownership of invention. — On January 25, 1980 the court entered the following order:
Before Friedman, Chief Judge, Davis and Smith, Judges.
*571 This patent case under 28 U.S.C. § 1498(a) and 35 U.S.C. § 183 comes before the court on cross-motions for summary judgment which have been argued orally. Plaintiff seeks compensation for allegedly unauthorized use by the Government of a line-of-sight anti-tank guided missile system said to be covered by plaintiffs U.S. Patent No. 3,868,883 ('883 patent). The application for this patent was placed under a secrecy order on November 4, 1965, and the patent did not issue until March 4, 1975. The defendant’s system which is said to infringe the patent is known as DRAGON. This suit was filed on May 20, 1977, after plaintiffs administrative claim for compensation had been refused.
The parties’ cross-motions for summary judgment are supported by 263 pages of briefs and many more pages of voluminous exhibits. A mass of issues and sub-issues is raised,[1] including the following questions (we list only the primary ones):
(a). Does the Government have title to the invention covered by the '883 patent because it was first reduced to practice in the performance of a government contract? This overriding issue implicates the following major issues:
(b). Was the invention first reduced to practice, prior to the government contracts on which defendant relies, by plaintiffs testing of the unassembled components plus proof, by computer verification or simulation, that the system as a whole would operate as expected?
(c). In any event was the invention embodied in the '883 patent excluded from coverage under the "subject invention” clauses of the government contracts by certain other clauses of those contracts?
(d). Is defendant precluded by the doctrine of laches from now asserting its title to the invention covered by the '883 patent?
(e). Is defendant equitably estopped by its conduct from now asserting its title to the invention covered by the '883 patent?
It is very plain to the court that this is another example of an involved litigation in which it was a mistake to bypass the trial judge entirely and thrust complex and novel *572 problems directly upon the court via detailed and contentious motions for summary judgment. See Georgia-Pacific Corp. v. United States, 215 Ct. Cl. 354, 357-58, 364, 568 F. 2d 1316, 1318-19, 1322, cert. denied, 439 U.S. 820 (1978); Space Research Corp. v. United States, 215 Ct. Cl. 941 (1977); Julius Goldman’s Egg City v. United States, 214 Ct. Cl. 345, 347-48, 556 F. 2d 1096, 1097 (1977); Cheyenne-Arapaho Tribes v. United States, 206 Ct. Cl. 340, 349, 512 F. 2d 1390, 1394 (1975). On the questions designated "(a)”, "(b)”, and "(c)” above (and all subordinate issues) the court needs the help of the Trial Division. On those matters, there are several contested issues of fact, and even if the problems can in the end be boiled down to pure questions of law, we would like to have the views of the trial judge on those novel and hitherto undecided issues, especially plaintiffs argument that it properly reduced and could reduce the invention to practice by use of computer simulation or verification. On all those issues, therefore, the case will be remanded to the trial judge.
However, on issues "(d)” and "(e)”, supra, we are prepared to rule definitively on the basis of the materials now before us on these motions for summary judgment. With respect to the laches point presented by plaintiff, we hold as a matter of law that defendant is not barred by laches from asserting in this litigation its title to the invention covered by the '883 patent.[2] At no time until this suit was begun in 1977, was the Government under any obligation to plaintiff to assert its ownership of the invention. The defendant had no duty or obligation under the "subject invention” clauses of the contracts to inform McDonnell Douglas that under those federal contracts it had such title; the duties and responsibilities of the "subject invention” clause lay upon plaintiff, the contractor, and nothing in the contractual provisions called upon the Government to disagree with plaintiffs failure to list the '883 invention or to set forth defendant’s own claims. By the same token, final payment could be made on the contracts without the Government’s having to warn McDonnell Douglas that there was doubt as to the *573 correctness of the company’s failure to designate the '883 invention as a "subject invention.” As for the denial of plaintiffs administrative claim, that could be permissibly placed, if the Government thought the defense adequate, solely on the single ground of non-infringement; obviously the Government did not have to spell out all its defenses to the administrative claim if it chose to reject the claim on that one ground alone. Plaintiff stresses the Government’s destruction of the contract files as a significant prejudice to McDonnell Douglas occasioned by the Government’s silence until 1977 on its claim of ownership of the invention. But, in addition to the lack of any Government obligation to bring forward any and all defenses it might have to a potential McDonnell Douglas claim, we fail to see how the unavailability of the full contract files can have any significant bearing on plaintiffs two primary arguments that the invention was reduced to practice before the federal contracts and that the special contract clauses eliminated the '883 invention from coverage by the "subject invention” clauses.
The same reasoning sustains rejection of plaintiffs related contention of equitable estoppel. On this aspect of the case McDonnell Douglas emphasizes that it constructed a plant in Titusville, Florida, in the expectation of receiving government procurement contracts for the DRAGON missile. But plaintiff had no legal justification to rely so heavily on its receiving such contracts even if it fully owned the '883 invention and if DRAGON infringed that patent. The Government’s competitive bidding process does not have to take account of a bidder’s ownership of a patent said to be involved in the procurement. See Rel-Reeves, Inc. v. United States, 209 Ct. Cl. 595, 639, 534 F. 2d 274, 298 (1976); Leesona Corp. v. United States, 220 Ct. Cl. 234, 599 F. 2d 958, 970 (1979), cert. denied, 444 U.S. 991 (1979); 38 Comp. Gen. 276, 278 (1958). A bid can be awarded to another bidder, leaving the patent-owner to sue under 28 U.S.C. § 1498.
Accordingly, It is Ordered that
(a) Plaintiffs motion for partial summary judgment is denied with prejudice as to the contentions that defendant is barred by laches or equitable estoppel, or both, from claiming ownership of the invention embodied in the '883 patent;
*574 (b) defendant’s motion for summary judgment and the remainder of plaintiffs motion for partial summary judgment are referred to the trial judge under Rule 54(a) for his opinion and recommendation for conclusions of law;
(c) if the trial judge is of the view that any of the issues thus referred to him call for further factual ventilation or further briefing, he is authorized in his full discretion to order such further briefing and/or a trial on such issues; and
(d) to the extent a trial is held, the motions for summary judgment shall be deemed denied without prejudice and further procedure in the case shall be governed by chapter XI of the Rules.

 The motions do not, however, cover the questions of patent validity or of infringement.

 Plaintiffs laches and equitable estoppel points both assume arguendo that the special contract provisions, on which plaintiff relies, did not exclude that invention from the "subject invention” clauses of the government contracts.