Charles **GLOECKNER**; Lake Sonoma Woods, Ltd., a California Partnership; Mark Trione; and Westamerica Bank, N.A., Trust Depart., as Trustee under the Will of Lewis M. Norton

v.

UNITED STATES.

No. 562–86L.

United States Court of Federal Claims.

Feb. 16, 1995.

Willard A. Carle III, Santa Rosa, CA, attorney of record, for plaintiffs.

Gregory D. Page, Washington, DC, with whom was Asst. Atty. Gen., Lois J. Schiffer, for defendant.

## OPINION

YOCK, Judge.

This inverse condemnation action comes before the Court on the defendant's motion to dismiss pursuant to RCFC 12(b)(1) and (4) for lack of subject matter jurisdiction. In its motion to dismiss, the defendant claims that the plaintiffs, as defendants in an eminent domain proceeding filed by the Government in the United States District Court for the Northern District of California, have interposed the same claim in another "suit or process against the United States"; thereby depriving this Court of subject matter jurisdiction over this inverse condemnation action. 28 U.S.C. § 1500 (1988 & Supp. V 1993).

*Statement of Facts*

At all times pertinent to this case, the plaintiffs, Charles Gloeckner and Lake Sonoma Woods, Ltd. ("Gloeckner–Sonoma"), owned easements to Kelley Road located west of the Warm Springs Dam and the Lake Sonoma Project in Sonoma County, California. These easements allowed the plaintiffs to traverse Kelley Road and access U.S. Highway 101 from various properties owned by the plaintiffs which abutted or had access to Kelley Road. In approximately January of 1987, the defendant acquired a fee simple interest in Kelley Road. This acquisition was made to implement plans for the construction of the Warm Springs Dam and the Lake Sonoma Project. Pursuant to these plans, the United States Army Corps of Engineers (the "Corps") planned to inundate those portions of Kelley Road west of Rockpile Road with water. Eventually, in 1984, the Corps commenced these plans and the areas of Kelley Road described above were indeed flooded so as to deny the plaintiffs use of their easements across Kelley Road.

In response, the plaintiffs filed the present action in this Court on September 8, 1987, alleging an inverse condemnation by the defendant and praying for just compensation. However, on September 21, 1987, the Government initiated eminent domain proceedings in the United States District Court for the Northern District of California with respect to the subject property in a case styled *United States of America, Plaintiff v. 21.35 Acres of Land, More or Less Situate in Sonoma County, State of California, and Duane O. Cimino,* Civil No. C–87–4833 (N.D. Cal.) (the *"Cimino* action"). Thus, Gloeckner–Sonoma, while they are plaintiffs in the action before this Court, are also defendants in the *Cimino* action. In the *Cimino* action, Gloeckner–Sonoma has countered the valuations of the subject property submitted by the Government and are offering evidence as to what they believe is the correct value of the property.

The Government has now filed the present motion to dismiss for lack of subject matter jurisdiction.[1] The issue before this Court is

---

1. Prior to the current motion being filed, the parties had mutually agreed to suspend this case pending the outcome in the district court condemnation action.

whether proffering evidence by the plaintiff as to the value of its property, in a separate eminent domain action initiated by the defendant, is a "claim * * * [in a] suit or process against the United States" within the meaning of section 1500 of title 28 of the United States Code. After consideration of the foregoing facts and after submission of the parties' respective briefs, the Court believes that this is not the case and denies the defendant's motion to dismiss.

### Discussion

The defendant argues that 28 U.S.C. § 1500 (1988 & Supp. V 1993) divests this Court of jurisdiction over the plaintiffs' inverse condemnation action. Section 1500 reads:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500 (1988 & Supp. V 1993). The defendant states that section 1500 divests the United States Court of Federal Claims of jurisdiction over a plaintiff's claim if the plaintiff interposes the same claim in separate "suit or process against the United States." As the defendant correctly explains, Gloeckner–Sonoma, in the eminent domain action, has proffered a valuation of the subject property contrary to the Government's offer. The defendant argues that by contesting the Government's valuation and offering its own evidence as to the value of the subject property, Gloeckner–Sonoma is interposing a claim in the *Cimino* action. Moreover, the defendant argues that it is the same claim because the two actions arise from the same operative facts. *UNR Indus., Inc. v. United States*, 962 F.2d 1013, 1023 (Fed.Cir.1992), *aff'd Keene Corp. v. United States*, —— U.S. ——, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993). Finally, the defendant, while conceding that since the plaintiffs in

this action are the defendants in the *Cimino* proceedings, Gloeckner–Sonoma's "claim" in the eminent domain action was not interposed by a suit, argues that the claim was made in a "process against the United States." 28 U.S.C. § 1500 (1988 & Supp. V 1993).

The plaintiffs counter that offering their own evidence as to the value of the subject property is not tantamount to filing a claim. To the contrary, the plaintiffs argue that they are merely asserting a "right to an entitlement" in the *Cimino* action since there is no dispute that the Government is liable to the plaintiffs for some amount of money. Moreover, the plaintiffs contend that they are the *defendants* in the eminent domain action, and, as such, cannot assert a "claim" as section 1500 uses the term. Finally, the plaintiffs argue that allowing the defendant to invoke section 1500 in this instance would be unfair to the plaintiffs because the Government could dismiss the eminent domain action, thereby, leaving the plaintiffs with no avenue of recovery. In the alternative, the plaintiffs also posit that application of section 1500 would be unfair because it would allow the Government to dictate in what venue a case will be litigated by simply filing another action in a district court and moving to dismiss proceedings filed by private litigants in the Court of Federal Claims.

Section 1500 divests this Court of jurisdiction when a plaintiff interposes the same claim in a separate "suit or process against the United States." 28 U.S.C. § 1500 (1988 & Supp. V 1993). The effect of section 1500 is to preclude the prosecution of the same claims against the United States in two courts simultaneously. *Johns–Manville Corp. v. United States*, 855 F.2d 1556, 1562 (Fed.Cir.1988), *cert. denied*, 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989). However, in determining whether two claims are the same for section 1500 purposes, courts do not look to the precise theories of recovery. Rather, two claims are the same if they are based on the same operative facts. *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1551 (Fed.Cir.1994); *Johns–Manville*, 855 F.2d at 1563. The defendant argues that the plaintiffs have interposed the

same claim in the district court and this Court because they have submitted their own value determinations in the eminent domain action, and the two actions relate to the same subject property.

■ The defendant's argument, however, turns section 1500 on its head, and is in contravention of established case law, as well as the purpose for which section 1500 was enacted. It is beyond dispute that courts, for the purpose of determining whether a plaintiff has asserted the same claim in another court for section 1500 purposes, look to the operative facts involved in both actions; however, the defendant's reliance on this rule of law in this instance is misplaced. As a general rule, a "claim" involves some affirmative prayer for relief, i.e., for money, or property, or equitable relief.[2] However, in the eminent domain proceedings, Gloeckner-Sonoma is not asserting a demand for relief. Rather, they are merely defending themselves in an action instituted by the Government by offering countervailing evidence. The defendant is equating defending a suit with interposing a claim. This view has already been judicially rejected. In *Meyer v. United States,* 138 Ct.Cl. 86, 150 F.Supp. 314 (1957), the United States Court of Claims was faced with facts which practically mirror those at issue in the case at bar. The plaintiff in *Meyer* was the assignee of a lease entered into by the United States for the use of an office building. Eventually, the Government went into possession of the entire building. However, the Government ceased paying rent for almost seven months to the plaintiff-assignee because the Comptroller General had deemed the lease violative of the Economy Act of 1932, which prohibited rent in excess of 15 percent of the fair market value of a property. The plaintiff then filed an action in the Court of Claims to recover the unpaid rents. Subsequent to this, however, the United States filed an eminent domain action in a district court to obtain the right to use and occupy the office building. In response to the Government's motion to dismiss based on section 1500, the court

framed the issue in the following manner: "[H]as plaintiff pending in any other court any suit against the United States or any one acting or professing to act directly or indirectly under the authority of the United States?" *Id.* 138 Ct.Cl. at 89, 150 F.Supp. at 316. The court, in rejecting the Government's motion to dismiss, responded that "the plaintiff has filed but one suit, the one here involved in this court." *Id.* The Court of Claims in *Georgia–Pacific Corp. v. United States,* 215 Ct.Cl. 354, 568 F.2d 1316, *cert. denied,* 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978), further clarified *Meyer,* by noting that *Meyer* stood for the proposition that "[section] 1500 bars only duplicative suits by claimants, and does not cover the situation where the other suit is brought by the Government itself." *Id.* 215 Ct.Cl. at 363 n. 8, 568 F.2d at 1322 n. 8; *see also Universal Fiberglass Corp. v. United States,* 210 Ct.Cl. 206, 218, 537 F.2d 393, 399 (1976) ("[Section 1500] does not apply when the Government, a defendant in this court, files suit in another Federal court."). These courts recognized that in defending a suit, a party is not interposing a claim. Rather, a claim involves some affirmative prayer for relief either through the institution of a suit or a counterclaim. This view accords with the purpose of section 1500 which is to bar duplicitous suits against the Government by forcing a plaintiff to make an election among which venues to litigate a case. *Universal Fiberglass,* 210 Ct.Cl. at 218, 537 F.2d at 393. These considerations are simply not at issue when it is the Government, not the plaintiff, who files the second cause of action. As such, this Court finds that since the plaintiff did not institute the district court action and has not filed a counterclaim in that same action, the plaintiff has not interposed another "claim" in a suit or process against the United States.

■ The defendant attempts to circumvent this rather straightforward rule by arguing that the plaintiffs' countervailing valuations are being submitted in a "process against the United States." As such, the

---

**2.** As such, courts have recognized that section 1500 is implicated not only in those instances in which a plaintiff actually institutes two separate actions, but when a party is a plaintiff in one

action and as a defendant in a second action, interposes a counterclaim. *Frantz Equip. Co. v. United States,* 120 Ct.Cl. 312, 314, 98 F.Supp. 579, 580 (1951).

defendant argues, the *Meyer* case is inapposite because it did not address the meaning of "process." This argument is unavailing for a number of reasons. First, to this Court, it seems irrelevant whether the purported "claim" was interposed in a suit or a process. The hurdle, which the defendant cannot overcome, is that Gloeckner–Sonoma is merely defending itself in the eminent domain action, not asserting a claim. Second, the defendant fundamentally misinterprets the term "process." The Federal Circuit spoke to the meaning of the term "process" in *UNR Indus., Inc. v. United States,* 962 F.2d 1013 (Fed.Cir.1992), and its interpretation is in direct conflict with the construction proffered by the defendant. In *UNR Industries,* the United States Claims Court had dismissed the plaintiff, Eagle–Picher's, complaint when a petition for a writ of certiorari to the Supreme Court was pending regarding the dismissal of Eagle–Picher's suit in the district court. The Federal Circuit noted that "a certiorari petition to the Supreme Court is arguably a process, if not a suit. And it is a process against the respondent, not the court of appeals." *Id.* at 1024. Thus, "process," as used in section 1500, still contemplates an action initiated by either a plaintiff or a defendant through a counterclaim. "Process" is simply a more all encompassing term relating to those aspects of a proceeding which might not technically be considered part of a suit.

Finally, the dubious nature of the defendant's argument is obvious from the inequitable results which it would engender. By finding Gloeckner–Sonoma's actions in defending against the eminent domain action a claim for section 1500 purposes, the Government would be able to dictate in what venue a case was litigated. If the Government did not wish to litigate a takings case in the Court of Federal Claims, it could simply file a second action based on the same operative facts in a district court, then move to dismiss the plaintiff's claim in this Court once, as a defendant in the second action, it proffered evidence contrary to that submitted by the Government. The Court is not prepared to condone such a result. Section 1500 was intended to force *a plaintiff* to elect in what forum it would litigate a claim. *Johns-Man-*ville v. United States, 855 F.2d 1556, 1562 (Fed.Cir.1988). It was not intended as a tool by which the Government could deny a plaintiff the opportunity to litigate a case in the venue of that party's choice.

## CONCLUSION

For the reasons discussed above, the defendant's Motion to Dismiss, based on section 1500 to title 28 of the United States Code, is denied. The plaintiff is to file a status report in this case outlining its intentions in this matter on or before March 17, 1995, with the defendant's status report due April 17, 1995.