**Janet L. ACKER, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

Nos. 213–78C, 399–78C, 76–79C, 266–79C, 580–79C, 57–80C, 137–80C and 543–82C.

United States Claims Court.

Sept. 13, 1991.

Stuart Rodney Wolk, Montville, N.J., for plaintiffs. Arthur E. Neuman, Washington, D.C., of counsel.

John W. Showalter, Asst. Director, with whom were Assistant Atty. Gen. Stuart M. Gerson and David M. Cohen, Director, Washington, D.C., for defendant.

OPINION

ANDEWELT, Judge.

I.

In these consolidated civilian pay actions, plaintiffs, teachers presently or formerly employed by the Department of Defense Overseas Dependents School System, seek living quarter allowances and travel agreements to which they allege they were entitled based on their teaching services in foreign areas. In *Acker v. United States,* 223 Ct.Cl. 281, 620 F.2d 802 (1980) (*Acker I*), the Court of Claims upheld the pertinent regulations which establish conditions for granting such allowances and agreements. The issues remaining involve application of those regulations to the facts of the instant cases.

For numerous of the plaintiffs, the government's decision that the plaintiffs were not eligible for living and travel allowances was made more than six years prior to institution of suit. In *Acker v. United States,* 6 Cl.Ct. 503 (1984) (*Acker II*), the Claims Court (Judge Mayer) concluded that despite this delay, those plaintiffs' claims were not necessarily barred in their entirety by the six-year statute of limitations because the claims may qualify as "continuing" claims. The court explained:

> Here, plaintiffs' claims first accrued on the dates Dependents Schools made the determinations that they were ineligible for living quarters allowances and travel agreements. Because this was more than six years before the filing of these suits, the claims would ordinarily be barred by the statute of limitations.

> The Court of Claims, however, fashioned an exception to this rule. It held

that certain claims against the government will be considered to be "continuing" in nature, accruing anew each time a payment is due. "This court has long adhered to the view that a suit for compensation due and payable periodically is, by its very nature, a 'continuing claim' which involves multiple causes of action, each arising at the time the Government fails to make the payment alleged to be due." *Burich v. United States*, 366 F.2d 984, 986, 177 Ct.Cl. 139 (1966). Therefore, if these claims are continuing, plaintiffs are entitled to recover the allowances accrued during the six years immediately preceding the filing of suit, even if the claims originally arose more than six years before.

6 Cl.Ct. at 512. The court then adopted a procedure by which these individual claims would be considered.

The instant actions were reassigned to this court. Defendant subsequently filed a motion seeking summary judgment on all remaining claims that were filed more than six years after the plaintiffs were initially denied pay allowances and travel agreements, *i.e.*, on all actions potentially saved by the continuing claim doctrine from being barred by the statute of limitations. Defendant argues, in effect, that in *Hart v. United States*, 910 F.2d 815 (Fed.Cir.1990), which was decided subsequent to *Acker II*, the Court of Appeals for the Federal Circuit invalidated the continuing claim doctrine as it previously had been applied by the Court of Claims. One judge of the Claims Court agreed with this interpretation and cited *Hart* for the proposition that "[t]his court no longer recognizes the continuing claim doctrine." *Sankey v. United States*, 22 Cl.Ct. 743, 746 (1991). In Section II below, this court agrees that the continuing claim doctrine, as currently formulated, may be analytically suspect. However, in Section III, this court explains that *Hart* cannot be interpreted to invalidate the continuing claim doctrine and that this court must therefore apply that doctrine as it has been formulated in binding Court of Claims precedent.

## II.

To be timely, a Claims Court action must be filed "within six years after [the] claim first accrues." 28 U.S.C. § 2501. A claim first accrues when "all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed.Cir.1988). Originally, the Court of Claims' recognition of continuing claims involved merely an interpretation of the statute of limitations and not an exception to it. The court viewed each payment due an employee as a separate "claim" which did not "first accrue" until the date the payment was due. *See, e.g., Levadi v. United States*, 146 F.Supp. 455, 137 Ct.Cl. 97, 100 (1956), *cert. denied*, 353 U.S. 917, 77 S.Ct. 665, 1 L.Ed.2d 664 (1957); *Cannon v. United States*, 146 F.Supp. 827, 137 Ct.Cl. 104, 108 (1956); *Odell v. United States*, 139 F.Supp. 747, 134 Ct.Cl. 634, 637 (1956). This approach, while arguably consistent with the wording of the statute of limitations, did obvious damage to the policies behind that statute. A governmental decision that an employee does not qualify for higher pay could have a continued effect on the employee for many years, sometimes decades. But if courts were required to review the correctness of the government's original decision so long after that decision was made, much of the relevant information would be gone and witnesses' memories would be faded.

In apparent response to this concern, the Court of Claims began to limit the continuing claim theory to situations where the delay in contesting the original government decision did not seriously affect the court's ability to consider the merits of that decision. In *Roberts v. United States*, 151 Ct.Cl. 360 (1960), the Court of Claims concluded that "the theory of continuing ... claims has merit in certain situations." *Id.* at 363. The court explained that "the purpose of the statute of limitations is not defeated or undermined in entertaining claims the operative facts of which first occurred over six years ago, as long as the facts necessary to a determination of those claims are before us with certainty and not

obscured by the dust of years." *Id.* In *Waite v. United States*, 230 Ct.Cl. 731, 733–34 (1982), *cert. denied*, 459 U.S. 1103, 103 S.Ct. 724, 74 L.Ed.2d 950 (1983), the court cited *Roberts* for the proposition that the continuing claim doctrine properly applies where " 'there are no uncertain, undiscovered, or disputed facts.' " *See also, Gordon v. United States*, 140 F.Supp. 263, 134 Ct.Cl. 840, 843 (1956); *Zoesch v. United States*, 650 F.2d 291, 226 Ct.Cl. 557, 559 (1980). Hence, under this evolved approach to continuing claims, the statute of limitations would be deemed to have run when, for example, as a result of "the dust of years," the facts relating to the original government decision are uncertain, undiscovered, or disputed. However, the statute would not be deemed to have run when, despite the passage of the same amount of time, the facts turn out to be certain, discovered, and not in dispute.

While this evolution in continuing claim analysis arguably produces more equitable results, it is not readily reconciled with the wording of the statute of limitations. *See, e.g.*, Judge Madden's concurring opinion in *Gordon*, 140 F.Supp. 263, 134 Ct.Cl. at 847–48. The six-year statute of limitations commences to run when a claim "first accrues." If all claims stemming from a government decision of nonentitlement were deemed to have "first accrue[d]" when that original decision was made, the statute of limitations necessarily would expire six years after that decision. On the other hand, if, as the continuing claim theory presupposes, each failure to make a payment constitutes a separate and distinct claim, then the statute of limitations on each such distinct claim reasonably could not expire until six years after that particular payment was refused. *See Cannon*, 146 F.Supp. 827, 137 Ct.Cl. at 108. Herein, until a plaintiff actually performed a teaching service and was denied allowances based on that service, "all events" could not possibly have occurred to fix the government's liability for payment for such service. Stated in another way, as of any specific date, either "all the events which fix the government's alleged liability" have occurred or they have not. As a matter of logic, a determination of whether all such events have occurred cannot be dependent upon the state of witnesses' memories or the certainty, discoverability, or extent of dispute concerning the government's original decision of nonentitlement. Contrary to the standard proposed in *Gordon*, the mere fading of memories cannot reasonably change a claim from one that has not yet accrued to one that accrued so long ago as to to be time barred.[1]

The Court of Claims may have recognized the significance of the evolution in its continuing claim analysis in that it began to refer to continuing claims as an "exception" to the statute of limitations rather than a mere interpretation. *See, e.g., Waite*, 230 Ct.Cl. at 733; *Zoesch*, 650 F.2d 291, 226 Ct.Cl. at 559. But suits cannot be brought against the United States unless the government has waived sovereign immunity. The waiver must be express and cannot be implied. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). The statute of limitations defines the time period during which Congress has waived sovereign immunity so as to permit suit against the government in the Claims Court. The continuing claim case precedent does not cite any authority that would permit the courts to create an exception to the statute of limitations and thereby, in effect, authorize suits against the United States that otherwise would be barred by Congress' statute of limitations.

### III.

Notwithstanding this court's misgivings about the analytic structure supporting the continuing claim doctrine as it has evolved, this court is bound to apply that doctrine. The continuing claim doctrine is well established through a long line of Court of Claims precedent. *See, e.g.*, the 35 Court of Claims continuing claim decisions cited in *Friedman v. United States*, 310 F.2d 381, 385, nn. 1 & 2, 159 Ct.Cl. 1, 7–8 (1962), *cert. denied, sub nom. Lipp v. United*

---

1. Faded memories are significant when applying the related equitable doctrine of laches. But laches applies only when a claim is brought *within* the statute of limitations. Here, the government alleges, in pertinent part, that the claims are barred by the statute of limitations.

*States*, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963). Contrary to defendant's suggestion, *Hart* cannot properly be interpreted to overrule that precedent.

First, if the *Hart* court intended to overrule such long-established precedent, it presumably would have made such an intent clear. It did not. *Hart* involved a claim for a survivor's annuity brought more than six years after eligibility for the annuity commenced. The lower court applied the continuing claim doctrine and allowed those claims seeking annuity for the six years immediately preceding suit. The Federal Circuit reversed and held that all the events which fixed the government's liability had occurred with the death that created the survivor's entitlement.

The *Hart* court spoke forcefully concerning the important interests promoted by the statute of limitations and the limited discretion granted courts when applying that statute. 910 F.2d at 818. However, the only continuing claim case cited in *Hart* was *Friedman* and the only statement made about *Friedman* was that the lower court in *Hart* had relied upon *dicta* in *Friedman*. *Id.* While possibly indicating a disagreement with unspecified *dicta* in *Friedman*, the Federal Circuit in *Hart* did not specify any intent to overrule the many other decisions in which the existence of a continuing claim was part of the court's holding, rather than *dicta*. *See, e.g. Cannon*, 146 F.Supp. 827, 137 Ct.Cl. at 108; *Gordon*, 140 F.Supp. 263, 134 Ct.Cl. at 844; *Roberts*, 151 Ct.Cl. at 363; *Carver v. United States*, 159 Ct.Cl. 67, 74 (1962).

Indeed, in *Hart*, the Federal Circuit appeared to conclude that "continuing" claims still do exist but that the *Hart* plaintiff had failed on the facts to demonstrate the existence of such a claim. Rather than indicating that continuing claims no longer exist, the court merely stated that "we conclude that plaintiff's claim for ... annu-

ity benefits is not a 'continuing' claim." *Hart*, 910 F.2d at 818.

Second, and more fundamentally, even if the three-judge panel in *Hart* had intended to overrule the long line of continuing claim cases, it could not have done so consistent with Federal Circuit precedent. As explained above, the continuing claim doctrine is a long-standing doctrine that was applied in numerous cases by the Court of Claims. Court of Claims precedent is binding on the Court of Appeals for the Federal Circuit and may be overturned only when the Federal Circuit sits en banc. *South Corp. v. United States*, 690 F.2d 1368, 1369–70, n. 2 (Fed.Cir.1982). *Hart* was not an en banc decision.

As the court in *Acker II* explained, the instant actions potentially fall within the continuing claim doctrine as that doctrine has evolved in binding precedent. For the reasons set forth above, this court cannot interpret *Hart* as overruling that precedent. Since certain of the Court of Claims precedent is closer than *Hart* to the instant facts, this court must deny defendant's motion for summary judgment to the extent it relies upon *Hart*.[2]

### Conclusion

Significant issues remain as to whether plaintiffs' claims qualify as continuing claims under the controlling precedent. During oral arguments, the court discussed the issues that remain to be resolved and instructed the parties as to the procedures for briefing them. Accordingly, on or before October 15, 1991, the parties shall file a status report, jointly or separately, proposing scheduling for further briefing.

IT IS SO ORDERED.

**2.** The instant actions seek remuneration for work performed during the six years prior to filing suit. This was also the case in *Cannon*, 146 F.Supp. 827, 137 Ct.Cl. 104; *McCormick v. United States*, 109 F.Supp. 718, 124 Ct.Cl. 111 (1953); *Hart v. United States*, 125 Ct.Cl. 294 (1953); *see also Aviles v. United States*, 151 Ct. Cl. 1 (1960). The Federal Circuit's *Hart* decision, however, involved a survivor's benefit and

therefore Mrs. Hart was not seeking payment for any work performed during the six-year statute period. It should be noted, however, that in *Hart*, as in all other continuing claim cases, there was an "event" that had to occur during the six-year pre-filing period for the plaintiff to receive the money she sought. Survivor's benefits are available to a beneficiary only so long as the beneficiary remains alive.