Light STEPHENSON, Jr.,
et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

Calvin J. SNOGA, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

Jimmy R. SNOGA, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

Nos. 768–86L, 298–88L and 299–88L.

United States Court of Federal Claims.

Feb. 27, 1997.

## Order

WEINSTEIN, Judge.

This complex Fifth Amendment takings case has been in this court for over ten years. (The court has issued two substantive orders,

*Stephenson v. United States,* 33 Fed.Cl. 63 (1994), *reconsideration denied,* (April 21, 1995), *mandamus denied,* 66 F.3d 345 (Fed. Cir.1995), which contain detailed discussions of the case's background and litigation history.) A related case involving some of the property at issue here is now being litigated in a condemnation action in the United States District Court for the Southern District of Texas. *United States v. 844 Acres,* No. 89–22 (S.D. Texas filed February 24, 1989). Another related condemnation action involving property at issue here has been decided by that court. *United States v. 427.87 Acres,* No. 89–128 (S.D.Tex. Sep. 13, 1994).

Currently before the court are three opposed government motions. The government asks this court (1) to dismiss the claims for pre-condemnation takings that the district court has agreed to hear, (2) to schedule further proceedings on a claim regarding property not involved in the district court cases, and (3) to dismiss a personal property takings claim. The court grants the first motion, ordering that the pre-condemnation takings claims be dismissed; denies the second motion, ordering a further stay of the 13.12–acre claim; and grants the third motion, dismissing plaintiffs' claim for a personal property taking of well drilling equipment.

### Background

This case concerns the federal government's alleged taking of the plaintiffs' mineral estates by fencing off and flooding a large area of their land when it opened the Choke Canyon reservoir and dam in Texas.[1] The government filed a formal condemnation action and declaration of taking of the property involved in the federal district court on February 24, 1989, almost three years after the original complaints were filed in this court. In their amended complaint, filed on February 25, 1992, the plaintiffs alleged that the taking took place on May 18, 1982.

Plaintiffs' original complaint was filed in 1986; a second complaint was filed by other plaintiffs in 1988. The actions were consolidated on September 20, 1987 and transferred to this judge on November 2, 1990. Plaintiffs amended their complaint in 1992. Cross-motions for summary judgment were denied on March 31, 1994. *Stephenson,* 33 Fed.Cl. at 75. Further proceedings in this court were stayed pending action by the district court in the two declaration of taking (condemnation) cases involving the property at issue here that were filed by the government on February 24, 1989.

On September 13, 1994, the district court entered judgment on one government condemnation case, involving the Snogas' 13.12–acre tract. *United States v. 427.87 Acres,* No. 89–128 (S.D.Tex. Sep. 13, 1994). It awarded compensation for the government condemnation as of the date the government filed its declaration of taking, but made no ruling on plaintiffs' action for damages arising from an alleged pre–1989 inverse condemnation, which it expressly left to this court in an Agreed Order issued on June 23, 1994. In the other government condemnation case involving plaintiffs, the district court, citing this court's 1995 decision concluding that the district court possessed such authority, *Stephenson,* 33 Fed.Cl. at 76, granted the claimants' motion to assert a pre-condemnation taking. *United States v. 844 Acres,* No. 89–22 (S.D.Tex. July 9, 1996). The district court thus has assumed jurisdiction over a large part of property that is the subject of the action filed in this court, and has agreed to decide whether additional damages may be recovered for an alleged pre–1989 taking.

Plaintiffs' complaints, as consolidated and amended, involve three distinct claims. First, plaintiffs allege a taking of 844 acres on or about May 18, 1982, as a result of the flooding caused by the operation of Choke Canyon dam, and associated damages of approximately $6.5 million. This claim is now being litigated by the district court in Texas. Second, plaintiffs claim damages of less than $50,000 for a taking on the same date of a separate 13.12–acre parcel of land. The district court has assessed damages as of the 1989 condemnation action by the government. Third, plaintiffs seek damages for the

---

1. In 1991, the parties stipulated to May 18, 1982 as the date of taking. This stipulation later was withdrawn by the government, as to the deep mineral estate.

alleged taking of one plaintiff's well equipment at or about the time of the 1982 flooding.

### Discussion

Three contested motions are pending. First, the government has moved for dismissal of all claims other than that for compensation for a 13.12–acre tract (discussed below), because the district court has assumed jurisdiction of those claims. Plaintiffs request, instead, a continuance of the stay currently in effect. Second, the government has moved for immediate scheduling of further proceedings related to the 13.12–acre tract, because it is not involved in the on-going district court litigation. Plaintiffs request a stay of proceedings on this claim pending final resolution of the related district court litigation. Third, the government has moved for dismissal of any claim based on the alleged taking of well equipment because the plaintiffs failed properly to state such a claim or, alternatively, because the statute of limitations had expired by the time they amended their complaint to add such a claim. Plaintiffs ask that this claim be set for trial.

I. *Dismissal of the portions of this case currently before the Texas district court*

█ The government urges this court to dismiss the complaints of all plaintiffs whose claims regard land located in the 844 acres being litigated in the district court in *United States v. 844 Acres,* No. 89–22. Because that court has assumed jurisdiction of their pre-condemnation takings claims, no issues remain to be litigated. The government argues that staying the action in this court runs counter to the principle of judicial economy.

Plaintiffs request that the stay be continued. They note that the government is dissatisfied with the district court's ruling that it can consider the earlier takings claims and may well appeal any unfavorable district court decision.[2] (Alternatively, plaintiffs might appeal.) Should the Fifth Circuit reverse the district court's assumption of jurisdiction over the pre-condemnation claims, plaintiffs fear they will have no means to revive those timely filed claims in this court.

As this case currently stands, the entire controversy will be determined by the district court. The issues in this court are identical to issues in the district court and the parties are the same. Therefore the district court's decision will be *res judicata* in this court. *See Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867, 874, 104 S.Ct. 2794, 2798, 81 L.Ed.2d 718 (1984) ("A judgment in favor of either side is conclusive in a subsequent action between them on any issue actually litigated and determined, if its determination was essential to that judgment.").

The Congress gave the district courts, not this court, jurisdiction over condemnation proceedings. *See* 40 U.S.C. § 258a. As this court determined in its April 21, 1995, order, a claim of a pre-condemnation taking by the government is simply another aspect of the valuation question facing the district court in condemnation suit. *See also Georgia–Pacific Corp. v. United States,* 568 F.2d 1316, 1320–21 (1978); *Gloeckner v. United States,* 32 Fed.Cl. 742, 745 (1995). Courts in Texas have a comparative advantage over this court in deciding valuation issues of this type, because they have far more experience in valuing oil and gas mineral rights. In addition, because the district court can hear both the condemnation and pre-condemnation aspects of this case, whereas this court can only hear the pre-condemnation aspects, it will conserve judicial resources to leave this litigation up to the district court.

█ Federal courts have "an ample degree of discretion" in deciding when to defer to other federal proceedings in order to avoid duplicative litigation. *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952) (discussing a district court). Also, in the interest of conserving judicial resources, courts have discretion in administering their dockets. *See Trippe Mfg. Co. v. American Power*

---

2. For an expression of this dissatisfaction, see footnote 1 on page 2 of the government's Memorandum of Law on Effect of District Court's Rulings on Jurisdiction and on Dismissal of Certain Plaintiffs.

*Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995). The court, in an exercise of this discretion, dismisses plaintiffs' pre-condemnation claims (with the exception discussed in the next section) so they may be fully and finally resolved in the district court.[3]

## II. *Proceedings concerning the 13.12–acre tract not before the U.S. District Court*

■ The government asks the court to set a schedule for trial of damages for a pre-condemnation taking of the mineral estate associated with the 13.12–acre parcel of land. The United States District Court for the Southern District of Texas awarded damages resulting from the 1989 condemnation of this land, *see United States v. 427.87 Acres*, No. 89–128 (S.D.Tex. June 23, 1994), but did not address the question of damages from a pre-condemnation taking. The government contends that there is no valid reason to await the decision of the district court in *844 Acres*, which has assumed jurisdiction of pre-condemnation takings on the parcels of land involved in that action, because that court's decision will not be binding on the litigation over the 13.12–acre parcel, and involves different parties and issues.

Plaintiffs urge the court to postpone action pending the district court decision in *844 Acres*, because the issues of earlier taking and valuation are essentially the same, this parcel being contiguous to the 844 acres and overlaying the same geologic formation. Plaintiffs claim that the case is scheduled for an April 1997 trial, that the district court judge has informed the parties there will be no more delays, and that any further delay therefore will be minimal.

The court concludes that the issues in the two cases are practically identical and that the evidence presented in that case very likely would be relevant to this case. While the district court's findings will not be binding on this court, they may well present the parties with grounds for settlement, reduce the need for discovery, or otherwise facilitate expeditious and less costly resolution of the issues here. Therefore, the court orders that the stay of proceedings on the 13.12–acre tract shall be continued until thirty days after the time for notice of appeal has run in *844 Acres*, or, if an appeal is filed, until the district court issues a final opinion. At that time, the parties shall propose a schedule for further proceedings on this claim.

## III. *The Personal Property Takings Claim*

■ The taking of personal property allegedly occurred in late 1980 or early 1981,[4] when the government hired a contractor to cap the gas wells on the land involved in this case, in preparation for the flooding of the land. Plaintiff Stephenson, who owned certain drilling and pumping equipment attached to the wells, allegedly told the government that he wanted to be at the wells when they were capped, so he could haul away his equipment, and was assured he would be notified at the proper time. Plaintiffs contend that the government, instead, failed to notify Stephenson and gave the equipment to the contractor as partial payment for the contractor's services.

The government disputes this court's authority to hear the Fifth Amendment takings claim pertaining to the well equipment, on the grounds that plaintiffs failed to file the claim within the six-year statute of limitations, *see* 28 U.S.C. § 2501. The government argues, in the alternative, that plaintiffs'

3. The court expresses no opinion on the question of whether a motion under rule 60(b)(6) of the Rules of the United States Court of Federal Claims may be allowed by this court in the event the Fifth Circuit reverses the district court's assumption of jurisdiction over the pre-condemnation claims.

4. There seems to be some confusion concerning exactly when the well equipment was taken. In an affidavit taken several years ago, plaintiff Stephenson said it happened within "a couple of weeks" after a conversation that took place at "the end of 1980 or early 1981." Stephenson Aff. ¶ 8 (Dec. 21, 1992) (Def.Memo.Ex. A). However, in their Response to the government's Memorandum, plaintiffs contend that the taking date was February 20, 1981. In considering a motion to dismiss, the court must construe the allegations of the complaint favorably to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Because the complaint is silent on this point, for the purposes of this motion, the court will assume the taking occurred on February 20, 1981.

claim lies in tort, and thus is beyond this court's jurisdiction.

Plaintiffs allege that adequate notice of the personal property taking claim was provided because the original complaint, filed on December 10, 1986, was filed within six years after February 20, 1981, and because the complaint identified the land and parties in question and stated that "appurtenances" to the mineral estate were taken. Alternatively, plaintiffs argue that the amended complaint filed in 1989 states a proper claim that should be deemed to relate back to the date of the original complaint.

### A. *Original complaint*

In the original December 10, 1986, complaint, plaintiffs alleged that "On or about January 1, 1982," defendant "flooded, fenced, and otherwise denied access to and excluded Plaintiffs from the above-described mineral interests and appurtenances thereto owned by Plaintiffs...." Compl. ¶ 3. In the prayer for relief, plaintiffs asked that the government compensate them "for the mineral estate and appurtenances thereto taken from [them]...." Compl. ¶ 5. All other references in the complaint to property are to the mineral estate. There is no reference to any taking on February 20, 1981 or to any alleged taking or other action by the government prior to January 1, 1982.

■ The government argues that the complaint language failed to provide fair notice of any claims associated with personal property taken in early 1981. The government points to the lack of any reference to, or description of, the well equipment. In addition, the government notes that plaintiff contends that the alleged taking of the well equipment occurred in early 1981, whereas the complaint describes only activities occurring around January 1982.

The government also argues that the term "appurtenances" used in the original complaint does not include items such as the well equipment, because "appurtenances" is a specific term of art under Texas law, *see Denny v. White House Lumber*, 150 S.W.2d 296, 300 (Tex.Civ.App. 1941), and is "confined to incorporeal rights, such as easements and

servitudes." Def. Mot. at 14. Alternatively, the government argues that, if the word was used generally, as a loose "catchall phrase" and not as a term of art, it fails to provide adequate notice.

Plaintiffs insist that the cited parts of the complaint provide adequate notice of the personal property taking claim, arguing that the term "appurtenances" should not be read as a term of art, based on an English dictionary defining appurtenances so broadly as not to exclude well equipment. *See* Pls. Response at 7–8.

■ Rule 8(a) of the RCFC states: "Claims for Relief. A pleading which sets forth a claim for relief ... shall contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief...." The Supreme Court has held that this rule requires that defendants receive *"fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) (emphasis added) (discussing substantively similar Rule 8 of the Federal Rules of Civil Procedure (FRCP)). This is not a strict test, especially in light of RCFC 8(f)'s command that "all pleadings shall be so construed as to do substantial justice." *Id.* Even so, plaintiffs' original claim does not provide "fair notice" of a takings claim for the well equipment, or of the grounds upon which it rests.

■ The federal system of notice pleading, though liberal in its demands, requires pleadings to state, at the very least, the "operative facts" upon which a claim is based. *Askanase v. Fatjo*, 148 F.R.D. 570, 573 (S.D.Tex.1993) (citing *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 198 (7th Cir.1985)). "To meet the standard of fair notice, a claim must contain 'either direct or inferential allegations respecting all the material elements necessary to sustain a recovery.....' " *Id.* (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984)).

Plaintiffs' original complaint does not state the "operative facts" or "all the material elements" of a government taking of equipment in 1981. Indeed, the first complaint

does not use any words such as "equipment," "personalty," or "personal property" or provided any other notice that personal property or well equipment was also at issue, and refers only to events that occurred many months after the well equipment allegedly was removed. The complaint states that the government denied access to and excluded plaintiffs from the mineral estate during the fencing and flooding of the land, but does not say, never mind describe, what allegedly happened to any unmentioned well equipment.

Also, the original complaint was filed jointly by a number of plaintiffs, all of whom shared an interest in the mineral estate. There is no hint in the complaint of any claim by a single plaintiff such as Stephenson, or regarding any property separate from the joint estate. Indeed, the prayer for relief requests a lump sum for all plaintiffs, and no separate sum for plaintiff Stephenson, as would be expected if a claim concerned his well equipment.

The circumstances described in the original complaint are not only distinct in time and type from the circumstances of the alleged taking of the well equipment, they describe none of the facts regarding the alleged removal of the well equipment, much less "all material elements."

▮ Plaintiffs urge this court to find that their use of the term "appurtenances" twice in the original complaint provided defendant sufficient notice that more than just the mineral estate was involved. This argument is unpersuasive, given the meaning of the term "appurtenances" under governing Texas law.

▮ This court is required to look to local law in construing the meaning of property terms, see *Preseault v. ICC*, 494 U.S. 1, 16 n. 9, 20–25, 110 S.Ct. 914, 924 n. 9, 926–928, 108 L.Ed.2d 1 (1990); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001, 104 S.Ct. 2862, 2871–72, 81 L.Ed.2d 815 (1984). In 1929, the Texas State Supreme Court held that oil and gas drilling equipment, specifically the well casing, were not "appurtenant" to an oil and gas lease. *Wagner Supply Co. v. Bateman*, 18 S.W.2d 1052, 1054 (Tex.1929) (equipment not an appurtenance where parties know it can be removed). It now appears firmly settled that well equipment is not considered an appurtenance. *See e.g.*, *Denny* 150 S.W.2d at 300 ("material, machinery and supplies.... includ[ing] a derrick and casing, did not constitute appurtenances"). Rather, Texas courts appear to distinguish between equipment and appurtenances. *See, e.g.*, *Kirkman v. Alexander*, 280 S.W.2d 365, 366 (Tex.Civ.App.1955) ("owners of an oil well drilling rig, tools, casing, other equipment *and* appurtenances located on said lease") (emphasis added). The court has found no Texas case where well equipment was treated as an appurtenance.

## B. *The Amended Claim and Relation Back*

▮ The plaintiffs amended their complaint on February 25, 1992 to state: "On or about May 18, 1982, Defendant United States of America completed construction of the Choke Canyon Dam and in preparation thereto has plugged oil wells capable of commercial production, seized equipment/appurtenances incident thereto,...." Am.Compl. ¶ 4. In the prayer for relief, plaintiffs ask that compensation be paid "for the mineral estate and appurtenances." Am.Compl. ¶ 6.

The amended complaint thus mentions equipment, but provides no other details relevant to plaintiffs' alleged property takings claim. That the government "plugged oil wells" does not imply anything about the taking of well equipment. The discrepancy between the date of the mineral estate taking and that of the alleged well equipment taking on February 20, 1981, has in fact increased, from eleven months before the January 1, 1982, mineral estate taking date given in the original complaint to fifteen months before the May 18, 1982, date alleged in the amended complaint. Nor does "seizure of equipment/appurtenances" give notice of what specific equipment or appurtenances are alleged to have been taken, by whom, or under what circumstances. More importantly, it refers to a seizure in 1982 contemporaneous with the flooding. Finally, the term equipment/appurtenances is vague and appears to be used merely as a catch-all.

The government contends that these meager statements in the amended complaints do

not constitute a proper taking claim, and that, even if they did, they do not relate back to the original complaint (and thus the claim is barred by the statute of limitations).

Plaintiffs do not answer defendant's contention that the amended complaint does not state a proper taking claim. Instead, they assume they did state a proper claim and argue that the amendments relate back to the original complaint because they "correct the legal term" from appurtenances to equipment/appurtenances and "specif[y] with greater particularity" the seizure of the equipment. Pl.'s Resp. at 10.

The court concludes that the sections of the amended complaint relied upon by plaintiffs also do not provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47, 78 S.Ct. at 103.

The nature of the alleged well equipment takings claim differs substantially from the mineral estate claims, because the well equipment takings claim involved a physical removal of items, was authorized by persons not mentioned in the complaints, and occurred at a different time than the alleged mineral estate takings by exclusion of the land. Nevertheless, neither complaint sets out circumstances distinct from the ones surrounding the alleged taking of the mineral estate in 1982. That is, they mention no time, governmental action, or motive, different than those involving the 1982 fencing and flooding of the land.

▆▆▆ "Relation back" occurs when the amended complaint adds a claim related to a claim notice of which was provided in the original complaint.

RCFC 15(c) states:

Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading *arose out of the conduct, transaction, or occurrence* set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

RCFC 15(c) (emphasis added).

The Federal Circuit has found that amended pleadings relate back when the original complaint provided "adequate notice of the new claim." *Korody–Colyer Corp. v. General Motors Corp.*, 828 F.2d 1572, 1575 (Fed.Cir. 1987) (citing *Besig v. Dolphin Boating & Swimming Club*, 683 F.2d 1271, 1278 (9th Cir.1982)) (discussing the substantively similar FRCP 15(c)); *see also Baldwin Park Comm. Hosp. v. United States*, 231 Ct.Cl. 1011, 1012, 1982 WL 25837 (1982); *Cross Const. Co. v. United States*, 225 Ct.Cl. 616, 617, 1980 WL 13189 (1980) (Stating that relation back is appropriate when the other "party was given timely notice of the claim asserted against [it]."); *Snoqualmie Tribe of Indians v. United States*, 372 F.2d 951, 961 (Ct.Cl.1967).

▆▆▆ In *Korody–Colyer*, the Federal Circuit found that the plaintiff's claim of enforcing a knowingly invalid patent, which was added in its amended complaint, did not relate back to the time of filing of the original complaint, which alleged antitrust violations. *Id.* at 1573. The court based this decision on its finding that the "amendment assert[ed] an entirely new claim for relief based upon different facts...." *Id.* at 1575. So, if a new claim is based on a set of facts different than those raised in the original complaint, it does not arise out of the same conduct, transaction, or occurrence and therefore does not relate back under Rule 15(c).

▆▆▆ Statutes of limitation "protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise." *United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979). They protect against stale claims. The exception provided by Rule 15(c) allows a plaintiff to add to or refine a claim only when these underlying concerns have been met. *See Baldwin Park*, 231 Ct.Cl. at 1012, 1982 WL 25837 ("The rationale for [Rule 15(c)] is that the opposite party had received timely notice of the claim asserted against him."). Rule 15(c), no more permits surprise than a statute of limitations does. Nor does Rule 15(c) permit requiring defendants to produce evidence that has long since been forgotten or lost, when they were

not put on reasonable notice to preserve that evidence.

In determining if an amendment should relate back, the key is whether the original complaint put defendant on notice that the type of evidence required for the new, amended claim should be preserved.

Under this standard, plaintiffs failed to provide sufficient warning of their well equipment claim. The government had no way to know from the original complaint that it should investigate the removal of certain well equipment over a year before the date used in the complaint or that it should attempt to preserve evidence relevant to such an incident. *See* discussion *supra* in III. A.

Where the amendment merely adds or substitutes parties, courts generally permit the amendments to relate back when the defendant had notice of the claim within the statutory period (*i.e.*, at the time when the original party filed). *See Baldwin Park,* 231 Ct.Cl. at 1012; *Cross,* 225 Ct.Cl. at 617. Where the amendment adds a new claim, relation back depends on the particular facts. *See Moore v. Baker,* 989 F.2d 1129, 1132, n. 1. (11th Cir.1993) (Plaintiff filed suit against a surgeon for a violation of the informed consent law; amended complaint claiming negligence during and after the surgery did not relate back when "nothing in [the plaintiff's] original complaint ... makes reference to any acts of alleged negligence by [the doctor] either during or after surgery."); *Oliner v. McBride's Indus.,* 106 F.R.D. 9, 13 (S.D.N.Y.1985) (Allowing relation back when the proposed claim for diversion of tangible assets was "a natural offshoot" of the basic scheme to divert intangible assets that was set forth in the earlier complaint, took place contemporaneously, and the defendant "was, or should have been, on notice that such a claim might be raise[d] in the course of th[is] litigation.").

The court finds that, even under liberal federal notice pleading rules, *see Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* 690 F.2d 1240, 1260 n. 29 (9th Cir.1982) (stating the court is mindful that the relation back doctrine should be liberally applied), plaintiffs' amended complaint did not properly state the Stephenson well equipment takings claim, nor, even if it did, would the amendment relate back to the claims, dates, and other facts and circumstances alleged in the original complaint. Therefore, plaintiffs' well equipment taking claim is barred by the statute of limitations.[5] The government's alternative argument that plaintiffs' personal property takings claim is a tort claim barred for lack of jurisdiction, *see* 28 U.S.C. § 1491, thus need not be addressed.

5. The bar of the statute of limitations is jurisdictional in this court. *See, e.g. Soriano v. United States,* 352 U.S. 270, 273, 77 S.Ct. 269, 271–72, 1 L.Ed.2d 306 (1957) (discussing this court's predecessor, the United States Court of Claims); *Kendall v. United States,* 107 U.S. 123, 2 S.Ct. 277, 27 L.Ed. 437 (1882); *Bath Iron Works Corp. v. United States,* 20 F.3d 1567, 1572 (Fed.Cir. 1994); *Hart v. United States,* 910 F.2d 815, 818–19 (Fed.Cir.1990); *Jones v. United States,* 801 F.2d 1334, 1335 (Fed.Cir.1986); *Kirby v. United States,* 201 Ct.Cl. 527, 539, 1973 WL 21341 (1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974). *See generally Wood–Ivey Sys. Corp. v. United States,* 4 F.3d 961, 964 (Fed. Cir.1993) (Nies, J., concurring and dissenting-in-part). Statements in *dicta* to the contrary in certain recent decisions by the Federal Circuit, *e.g., Henke v. United States,* 60 F.3d 795, 798–99 (Fed.Cir.1995); *Spruill v. Merit Systems Protection Board,* 978 F.2d 679, 687–88 (Fed.Cir.1992), and this court, *e.g., Brown v. United States,* No. 95–634C, slip. op. at 2–3 (Fed.Cl. June 25, 1996); *Glick v. United States,* 25 Cl.Ct. 435, 439–40 (1992), do not overrule this precedent, which may be set aside only by a decision of the court sitting *en banc. See In re Kemps,* 97 F.3d 1427, 1431 (Fed.Cir.1996); Rule 35 of the Rules of Practice before the United States Court of Appeals for the Federal Circuit. It bears noting that *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990), heavily relied upon by these decisions, did not overrule *Soriano. See Bath Iron Works,* 20 F.3d at 1572 n. 2. In fact, even recognizing that equitable tolling was available to toll a statute of limitations, the court in *Irwin* affirmed the Court of Appeals decision affirming the district court's dismissal, which was on jurisdictional grounds. Note too that, while equitable tolling, as equitable relief, may be awarded by the district courts, this court does not have equity powers. Thus, those disputes in which the statute of limitations has run often come (or return) to this court, not as cases under the Tucker Act, but rather as "congressional references" in which the court makes a recommendation to Congress, not a judicial decision.

### Conclusion

For the foregoing reasons, the court dismisses the claims for damages for a taking before 1989, which are before the court in *United States v. 844 Acres,* and stays proceedings on the claim involving the 13.12–acre tract until thirty days after the deadline for filing an appeal from a decision by the *844 Acres* court or, if it is appealed, until thirty days after a final decision by the court of appeals. At that time, the parties shall file a motion to dismiss or a status report proposing further proceedings. Plaintiffs' claim for a taking of well equipment is dismissed for lack of jurisdiction. The Clerk shall enter judgment accordingly.