**Louella T. NICHOLAS, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 96–394 C.**

United States Court of Federal Claims.

Nov. 24, 1998.

374

Louella T. Nicholas, Foley, AL, pro se.

Lauren S. Moore, with whom were Assistant Attorney General Frank W. Hunger, David M. Cohen, Anthony H. Anikeeff and Randolph N. Blair, Jr., Washington, DC, for defendant.

## OPINION and ORDER

TURNER, Judge.

This case stands on defendant's motion filed September 3, 1996 to dismiss for lack of subject-matter jurisdiction this civil action seeking annuity benefits under the Survivor Benefit Plan applicable to the United States Marine Corps. We conclude that we have subject matter jurisdiction of plaintiff's claims but that on the alternative ground of failure to state a claim upon which relief can be granted, the case should be dismissed in part.

Specifically, we conclude that plaintiff asserts a viable claim for annuity payments accruing within the six years preceding her complaint but that no relief can be granted for annuity payments accruing more than six years prior to commencement of this civil action.

### I

Plaintiff is the former spouse of Lt. Col. Charles E. Nicholas (LTC Nicholas) who served in the Marine Corp for approximately

15 years. Compl., ¶ 4. In 1967, LTC Nicholas retired because a brain tumor rendered him permanently disabled. *Id.*

Plaintiff alleges the following. "Several days before his retirement, [LTC] Nicholas elected to participate in the Retired Serviceman's Family Protection Plan (RSFPP) [10 U.S.C. 1431 *et seq.*]." *Id.*, ¶ 5. According to a form dated July 27, 1967, LTC Nicholas selected coverage for only his children. Pl. Resp. (10/24/96) at 2. In 1972, RSFPP was superseded by the Survivor Benefit Plan (SBP), 10 U.S.C. 1447 et seq. Compl., ¶ 6. On September 21, 1972, LTC Nicholas "converted his coverage from RSFPP to the SBP" and "opted for annuity coverage for spouse and children." Compl., ¶ 6; Pl. Resp. (10/24/96) at 3. In 1973, plaintiff separated from LTC Nicholas. Compl., ¶ 7. In 1980, plaintiff and LTC Nicholas were divorced and neither remarried. *Id.*, ¶¶ 8, 10.

On March 17, 1987, LTC Nicholas died. Compl., ¶ 11. Plaintiff received no annuity payments through LTC Nicholas' SBP coverage. *Id.* Later that same year, plaintiff wrote to a Member of Congress to inquire about the annuity. *Id.*, ¶ 12. Plaintiff was informed that "there was no record that her former husband had ever made a selection for either RSFPP or SBP." Pl. Resp. (10/24/96) at 2; Compl., ¶ 12.

"Plaintiff subsequently retired and moved to Alabama." *Id.*, ¶ 13. In 1991, plaintiff wrote to another Member of Congress to inquire about the SBP annuity. *Id.*, ¶ 13. That Member's office sent to plaintiff a copy of a letter from Marine Corps Headquarters which indicated that LTC Nicholas had not made an election for his spouse or his children under SBP. *Id.*

Eventually, plaintiff wrote to Defense Finance and Accounting Service (DFAS). *Id.*, ¶ 14. In July 1992, she received oral confirmation from DFAS that LTC Nicholas had elected coverage under RSFPP, and later SBP. However, she also learned that he had opted out of SBP "in July 1980 by reason of divorce." *Id.*, ¶¶ 14–15. In August 1992, DFAS sent plaintiff a copy of LTC Nicholas' pay records which further indicated that the military had made deductions from his retirement pay for an RSFPP annuity and then for

an SBP annuity prior to his cancellation of the benefits. *Id.*, ¶ 7.

In July 1993, plaintiff submitted an Application For Correction of Military Records to the Board for Correction of Naval Records (BCNR). *Id.*, ¶ 19. Plaintiff asserted that she was wrongfully denied annuity payments because she was never notified of nor had she consented to LTC Nicholas' change to her coverage as required by the applicable military regulations. *Id.*, ¶¶ 18–19. On August 2, 1994, "the BCNR denied plaintiff's, application on the ground that plaintiff was not eligible for a SBP annuity because [LTC] Nicholas did not elect former spouse coverage during the twelve months following their divorce." *Id.*, ¶ 20.

Plaintiff claims that she is entitled to her annuity and that the BCNR's decision to deny her coverage was arbitrary and capricious, not based on substantial evidence, and contrary to law and military regulations. *Id.*, ¶ 22.

## II

For purposes of addressing defendant's dispositive motion, we assume the correctness of the substantive aspects of plaintiff's claim. Thus, we assume (without deciding) at this juncture that LTC Nicholas' option out of SBP in July 1980 does not vitiate plaintiff's cause of action, that when a member of the military elects not to participate in the SBP, the military must notify the member's spouse of this election, that failure to notify the spouse voids the member's election not to participate in the SBP and that the member is automatically enrolled, and that a divorced former spouse is entitled to notice before cancellation of participation in the SBP can become effective. *See generally Barber v. United States,* 230 Ct.Cl. 287, 676 F.2d 651, 657–58 (Ct.Cl.1982); 10 U.S.C. 1447–48. Defendant apparently does not dispute that (1) LTC Nicholas served in the military; (2) the government failed to notify plaintiff of LTC Nicholas' discontinuance of SBP participation, and (3) LTC Nicholas died.

The sole issues currently before us for resolution are whether plaintiff's claims are

barred, in whole or in part, by a statute of limitations and whether applicable statutes of limitation should be tolled.

### III

To the extent that defendant's motion is one to dismiss for lack of jurisdiction, we believe it is mislabeled. The nub of defendant's motion is that the statute of limitations expired before the filing of this case. Even if true, this is not a jurisdictional defect. That much is apparent from the language of the relevant statute of limitations, which provides that the lapse of six years bars relief for "[e]very claim of which the ... Court of Federal Claims has jurisdiction...." 28 U.S.C. 2501.

While the Federal Circuit, by its own acknowledgment, has not been consistent in characterizing jurisdictional dismissals, that court has clarified the subject and reconciled conflicting language in earlier cases. *See Spruill v. Merit Systems Protection Board,* 978 F.2d 679, 686–89 (Fed.Cir.1992). Spruill deals in compelling terms both with the general problem of distinguishing jurisdictional from non-jurisdictional dismissals and with the specific problem of dismissals founded on a statute of limitations. Any doubt that a successful staleness defense results in a dismissal on the merits (and thus not for lack of jurisdiction) has been resolved by Spruill. Ascertaining the staleness of a claim is itself an exercise of the court's jurisdiction. *See Lovett v. United States,* 81 F.3d 143, 145 (Fed.Cir.1996) (stating that since Court of Federal Claims had jurisdiction to hear tax refund suits under 28 U.S.C. 1346(a)(1), it was inaccurate for court to dismiss complaint for lack of subject matter jurisdiction on statute of limitations grounds); *Gould, Inc. v. United States,* 67 F.3d 925, 929 (Fed.Cir. 1995) (citing *Do–Well Mach. Shop, Inc. v. United States,* 870 F.2d 637, 639–40 (Fed.Cir. 1989)) (stating that court must assume jurisdiction in order to rule on a time-bar provision); *Henke v. United States,* 60 F.3d 795, 798 n. 3 (Fed.Cir.1995) (concluding that statute of limitations defense does not deprive the court of jurisdiction to hear the case and that court could not adjudicate the application of the statute if it did not have jurisdic-

tion over the claim). *But see, Hart v. United States,* 910 F.2d 815, 818–19 (Fed.Cir.1990) (concluding that statute of limitations provision in 28 U.S.C. 2501 is jurisdictional in nature); *Jones v. United States,* 801 F.2d 1334, 1335 (Fed.Cir.1986) (finding that compliance with Court of Claims statute of limitations is jurisdictional); *Stephenson v. United States,* 37 Fed.Cl. 396, 406 n. 5 (1997) (finding that statute of limitations which barred equipment takings claim was jurisdictional in nature).

### IV

Claims brought in this court "shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. 2501. All claims filed against the government shall be barred "unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401. Plaintiff contends that her complaint is timely and that even if it were untimely, the statute of limitations should be tolled.

Defendant contends that plaintiff's claims are barred by these statutes of limitation. Defendant relies in large part on the Federal Circuit's decision in *Hart v. United States,* 910 F.2d 815, 818 (1990). In *Hart,* the Federal Circuit held that a claim for survivor annuity benefits is a unitary claim which accrues on the day of the service member's death and is not a "continuing" claim. *Id.* Thus, the court explained that entitlement to each annuity payment does not constitute a separate cause of action with its own limitations period. *Id.*

After defendant filed its motion, the Supreme Court issued its decision in *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corporation of California, Inc.,* 522 U.S. 192, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997). In *Bay Area Laundry,* the Supreme Court, construing a federal statute of limitations with a six-year limitations period pertaining to liability for a series of installment payments, ruled that "the statute of limitations does not begin to run" for failure to pay "withdrawal liability" under a pension fund "until a scheduled payment is missed." *Id.,* 118 S.Ct. at 546. The Court further

ruled that the statute of limitations with respect to each missed payment runs from the due date of each such missed payment. *Id.* The Court explicitly stated:

> Respondents contend that petitioner's failure to sue within six years of the first missed payment bars suit for all missed payments. We disagree. The MPPAA imposes on employers an installment obligation. *Consistent with general principles governing installment obligations, each missed payment creates a separate cause of action with its own six-year limitations period.*

*Id.* (Emphasis added.)

In response to our request, the parties filed memoranda addressing the Supreme Court's ruling in *Bay Area Laundry.* Plaintiff contends that the ruling supports her position. Defendant asserts that *Bay Area Laundry* is distinguishable from this case and should be confined to its facts. Defendant also cites recent authority which indicates the continuing viability of *Hart. See Ariadne Financial Services Pty. Ltd. v. United States,* 133 F.3d 874, 879 (Fed.Cir. 1998) (concluding that Federal Home Loan Bank Board's repudiation of a contract with plaintiff which created a paper asset called "supervisory goodwill" was a solitary event which activated the applicable statute of limitation despite plaintiff's subsequent loss of supervisory goodwill over a fixed number of years as a result of that repudiation and, thus, that the continuing claim doctrine did "not apply to [that] claim [which was] based on a single distinct event which [had] ill effects that [continued] to accumulate over time").[1]

Defendant argues that Hart is binding precedent and, therefore, the statute of limitations began running on the date of LTC Nicholas' death. Defendant further contends that Bay Area Laundry is distinguishable because the Supreme Court based its decision on the particular continuing nature of installment claims under the Multiemployer Pension Plan Amendments (MPPAA), whereas plaintiff in the instant case relies on different legislation.[2]

We are not persuaded by defendant's distinctions between Bay Area Laundry and Hart. We conclude that *Bay Area Laundry* abrogates the Federal Circuit's decision in *Hart.*

In *Bay Area Laundry,* a multiemployer pension fund brought suit under the MPPAA to the Employee Retirement Income Security Act (ERISA) of 1974 to collect withdrawal liability resulting from the employer's complete withdrawal from the fund. The MPPAA requires employers who withdraw from multiemployer pension plans to pay withdrawal liability. *Bay Area Laundry,* 118 S.Ct. at 546. The Supreme Court initially had to decide at what point plaintiff's cause of action had accrued.

A statute of limitations period begins to run when the plaintiff has a " 'complete and present cause of action.' " *Bay Area Laundry,* 118 S.Ct. at 549 (quoting *Rawlings v. Ray,* 312 U.S. 96, 98, 61 S.Ct. 473, 85 L.Ed. 605 (1941)). In *Bay Area Laundry,* the Supreme Court held that under the MPPAA a "complete and present cause of action" arose (1) when the trustees made a demand for payment and (2) when the employer defaulted on an installment obligation that was due. 118 S.Ct. at 549.

Under the SBP, a complete and present cause of action arises on "the first day after the death" of the service member when "a monthly annuity under [10 U.S.C.] section 1451 ... shall be paid to ... the eligible former spouse." 10 U.S.C. 1450(a)(1). As in *Bay Area Laundry,* this necessarily involves two steps. First, the service member must die (hence triggering payment of a monthly

---

1. Defendant additionally cites *Ignacio v. United States,* 135 F.3d 775 (Fed.Cir.1998). However, *Ignacio* is an unpublished decision and, as such, is not citable as precedent. *See* Fed. Cir.Loc. R. 47.6(b).

2. Defendant also argues that in *Bay Area Laundry* the claim did not accrue until the trustees made

an installment demand for payments and thereafter the employer failed to make the first installment payment. *Bay Area Laundry,* 118 S.Ct. at 546. As the demand necessarily required multiple payments, a new cause of action became viable for each installment obligation.

annuity) and then the government must fail to make a monthly annuity payment when due.

Although the Federal Circuit held that a cause of action involving an SBP claim became "complete and present" upon the service member's death, *Hart*, 910 F.2d at 818, the Supreme Court reasoned that in an installment-obligation setting the plaintiff had to wait until an installment payment was missed "before suing to collect that payment." *Bay Area Laundry*, 118 S.Ct. at 552. We see no reason to view the annuity payments in *Hart* differently from installment obligations in Bay Area Laundry. Both scenarios involve separate, continuing payments to be made at specific intervals. Thus, in this case, plaintiff could not reasonably sue for any annuity obligation upon the death of LTC Nicholas, but had to wait until an annuity payment had been defaulted upon. *See* 10 U.S.C. 1450(a)(1).

Moreover, prior to the government's default on the initial monthly payment, plaintiff would have had no practical reason to file suit as no obligation would have been breached and her claim would have necessarily been premature. In both *Bay Area Laundry* and the present case, the statute of limitations commenced on the date of the defendant's failure to make its initial payment.

However, even after defendant's default on its initial installment obligation, plaintiff could not have recovered all payments which might accrue under the entire obligation. Liability for each successive obligation only arises upon non-payment of that particular installment. *Bay Area Laundry*, 118 S.Ct. at 552. "A statute of limitations does not begin to run until the plaintiff could sue to enforce the obligation at issue." *Id.* A separate cause of action " 'arises from the date each payment is missed.' " *Id.* (quoting *Board of Trustees of District No. 15 Machinists' Pension Fund v. Kahle Engineering Corp.*, 43 F.3d 852, 857 (C.A.3 1994)). Thus, a plaintiff may only sue for specific payments as they became due and were defaulted on. *Id.*

In this case, plaintiff could not have recovered the entire obligation after defendant's initial default. Plaintiff could only have ob-

tained those annuity installments which had accrued but remained unpaid. Thus, relying upon the rationale of *Bay Area Laundry*, it would seem that a new claim necessarily arose for each annuity payment which defendant failed to pay.

However, defendant contends that a strict reading of the statutes of limitation at issue mandates the conclusion that plaintiff had one unitary claim. Defendant asserts that *Hart* involved a suit against the government (as does this case), while *Bay Area Laundry* involved a private defendant. This distinction is important, defendant argues, because courts must narrowly construe a statute of limitations period in suits against the government. *See Soriano v. United States*, 352 U.S. 270, 273–74, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957) (*citing Kendall v. United States*, 107 U.S. 123, 125, 2 S.Ct. 277, 27 L.Ed. 437 (1883)) (finding that Congress, in creating the Court of Claims, restricted that Court's jurisdiction by, among other things, specifically limiting suits to those "within six years after such claim first accrues"). Defendant further contends that strict construction is especially important in this claim for annuity payments under the SBP because the effect of finding a series of continuing claims would create a cause of action for which the statute of limitations would never run. *Hart*, 910 F.2d at 818.

■ We agree with defendant that a statute of limitations involving the government must be strictly construed. *See, e.g., Block v. North Dakota ex rel. Board of University & School Lands*, 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983). Nonetheless, in light of *Bay Area Laundry*, our conclusion must remain the same. Each missed annuity payment logically and necessarily raises a separate cause of action because (1) plaintiff could not bring suit for the entire potential value of the annuity upon an initial default and (2) plaintiff could only sue for payments as they became due.

Moreover, the practical effect of our conclusion does not, as defendant asserts, prevent the statute of limitations from ever running. Plaintiff's claim "is timely [only] as to any payments that came due during the six

years (preceding) the suit." *Bay Area Laundry,* 118 S.Ct. at 553. The statute of limitations bars payments that "came due prior to that time. . . ." *Id.* Thus, the annuity payments that were due over six years prior to plaintiff's complaint are time barred.

■ In light of *Bay Area Laundry,* we conclude that the continuing claim doctrine applies to plaintiff's claim, notwithstanding that *Hart* would compel a different result.[3] Under the continuing claim doctrine, "when the government owes a plaintiff a continuing, recurring duty to make payments of money, a new cause of action arises with each breach of that duty." *Hatter v. United States,* 38 Fed.Cl. 166, 180 (1997) (citing *Tabbee v. United States,* 30 Fed.Cl. 1, 5 (1993)). Thus, in an installment-payment situation, every failure to pay a particular installment results in a separate cause of action. "The continuing claim doctrine prevent[s] a statute of limitations from shielding an offender in an on-going wrongdoing, and protect[s] recurring claims that might otherwise be barred if based upon events occurring more than six years prior to suit." *Hatter,* 38 Fed.Cl. at 180.

■ In light of the Supreme Court's decision in *Bay Area Laundry,* we conclude that each installment payment accruing with respect to a SBP annuity gives rise to a separate, distinct claim and that those arising within six years preceding her suit are not time barred. The statutes of limitation bar only annuity payments which came due more than six years prior to her complaint.[4]

## V

We now consider whether the statutes of limitation should be tolled for those payments which came due more than six years prior to plaintiff's complaint.

■ There is a rebuttable presumption that equitable tolling is permissible both for suits against private defendants and for suits against the United States. *Irwin v. Dept. of Veterans Affairs,* 498 U.S. 89, 94–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). There are at least two categories in which equitable tolling may be appropriate: "[1] where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or [2] where the complaint has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Id.* at 94–97, 111 S.Ct. 453. Under appropriate circumstances, the Federal Circuit has applied equitable tolling principles to the statute of limitations at issue in this case. *See Catawba Indian Tribe of South Carolina v. United States,* 982 F.2d 1564, 1570–72 (Fed.Cir.1993) (concluding that equitable tolling principles apply to 28 U.S.C. 2501); *see also, Bailey v. West,* 160 F.3d 1360, 1364–65 (Fed.Cir.1998) (finding that equitable tolling of statute of limitations was appropriate where veteran's notice of appeal was untimely due to administrative failure in Department of Veterans Affairs' Regional Office despite veteran's timely filing of the proper form in that office).

In the instant case, plaintiff did not file a defective pleading within the statutory period. Thus, we need only consider whether plaintiff was induced by defendant's misconduct into allowing the statutory deadline to pass.

■ Plaintiff argues that commencement of the limitations period should be tolled because of defendant's failure to inform her of her right to SBP benefits. She asserts that despite her lengthy efforts, defendant

---

**3.** In this context, it is worth noting the history of the precedent regarding the continuing claim doctrine. "The continuing claim doctrine is well established through a long line of Court of Claims precedent." *Acker v. United States,* 23 Cl.Ct. 803, 805–06 (1991) (citing *Friedman v. United States,* 310 F.2d 381, 385 nn. 1 & 2 (1962), *cert. denied, sub. nom. Lipp v. United States,* 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963)). Court of Claims precedent binds the Court of Appeals for the Federal Circuit and may only be overturned by the Federal Circuit

sitting *en banc. Acker,* 23 Cl.Ct. at 806 (*citing South Corp. v. United States,* 690 F.2d 1368, 1369–70 n. 2 (Fed.Cir.1982)). Although *Hart* was not an en banc decision, it undertook to overrule that precedent. *Acker,* 23 Cl.Ct. at 806.

**4.** Although *Ariadne,* 133 F.3d 874 was decided after *Bay Area Laundry,* we note that the court did not analyze or even mention *Bay Area Laundry* and its affect on *Hart.*

consistently stated that it had no record of LTC Nicholas' enrollment in SBP. Only after plaintiff requested LTC Nicholas' pay records directly from the military did she receive proof of LTC Nicholas' election of SBP benefits. Plaintiff further asserts that defendant concealed pertinent information from her and that the limitations period should not begin to run until she received material evidence regarding LTC Nicholas' SBP benefits in July 1992. Thus, plaintiff argues that she should be eligible for all the annuity payments under the SBP.

Although plaintiff did not have specific documentation regarding her right to an SBP annuity at the time of LTC Nicholas' death in 1987, her lengthy pursuit of SBP benefits indicates that she knew of her right to the benefits at the time of his death. However, after her initial inquiry to a Member of Congress, plaintiff waited four years before again pursuing the benefits. In 1991, plaintiff received a second notification, this time from a different Member of Congress, that her ex-husband's records did not reflect SBP coverage.

Eventually, in July 1992, plaintiff requested and orally received directly from the military information regarding LTC Nicholas' pay records which indicated his election of coverage under the SBP. These records also indicated that LTC Nicholas had opted out of the program in July 1980. Not later than September 1992, plaintiff received copies of these records. She received this information the first time that she attempted to obtain LTC Nicholas' records directly from the military. When plaintiff received the information regarding LTC Nicholas' election of SBP benefits, the statute of limitations had not yet run.

Significantly, these developments occurred approximately eight months before the March 1993 expiration of the statute of limitations applicable to the first monthly installment of any SBP annuity to which she may have been entitled. Moreover, these events indicate the military's willingness to provide plaintiff with LTC Nicholas' records. Presumably she could have requested such records at the time of LTC Nicholas' death or at any time up to March 1993.

Despite such ample opportunity to take legal action, plaintiff failed to pursue court remedies until more than nine years after the initial payment came due and three years after the statute of limitations for the initial payment had run. "[C]ourts are less likely to toll [a] limitations period when the filing is late and 'claimant failed to exercise due diligence in preserving his legal rights.'" *Bailey*, 160 F.3d at 1364 (quoting *Irwin*, 498 U.S. at 96, 111 S.Ct. 453).

The Federal Circuit most recently analyzed the equitable tolling doctrine in *Bailey*, 160 F.3d 1360. In that case, the issue involved the untimely filing of a notice of appeal for veteran's benefits. The plaintiff filed Form 21–4138 in a Department of Veterans Affairs' Regional office and was told that this form would "get his appeal started." *Id.* at 1363–64. Unbeknownst to the plaintiff, the Veteran's Affairs' representative never properly filed the form and the appeal period expired. The court held that the Veteran's Affairs' representative induced the plaintiff into missing the statute of limitations deadline. *Id.* Thus, the court tolled the statute of limitations. *Id.*

The present case is readily distinguishable. There is no evidence that defendant induced plaintiff into allowing the filing deadline to pass after she indicated an intention to file suit. Despite the fact that plaintiff initially received negative responses to her inquiries regarding her right to SBP benefits, she suspected that she was entitled to a survivor annuity and pursued her claims.

Plainly, at the time of LTC Nicholas' death in 1987, plaintiff knew of that fact and that she had received no notice concerning his cancellation of SBP coverage; further, she had reason to believe (accurately) that he had been enrolled in a survivor benefit program. Nonetheless, she failed to file a law suit.

We conclude that the statute of limitations should not be tolled with respect to the SBP annuity payments which accrued more than six years prior to the filing of the complaint on July 3, 1996.

## VI

Based on the foregoing, defendant's motion to dismiss for lack of jurisdiction is DENIED. However, on the alternative ground of failure to state a claim on which relief can be granted, this civil action is DISMISSED IN PART (i.e., to the extent that plaintiff asserts a claim for annuity payments accruing from the due-date of the first payment following LTC Nicholas' death to the last due-date preceding July 3, 1990). Judgment concerning the partial dismissal shall be withheld pending resolution of all remaining issues.

There remains pending for resolution plaintiff's claim for survivor annuity payments accruing after July 2, 1990.

Pursuant to defendant's request, Def. Not. (9/3/96) at 5 n. 4; Def. Reply (11/21/96) at 1 n. 2, the answer or other response to plaintiff's complaint shall be filed within 30 days from the date of this order.